## KIMBRO *v.* INSURANCE CO.

### (*Knoxville.* September 28, 1898.)

1. COURT OF CHANCERY APPEALS. *Remedy for defective findings.*

   The remedy for defective or insufficient findings by the Court of Chancery Appeals is an application to that Court for a more full and definite finding, and not by assignment of error on appeal. (*Post, pp. 246, 247.*)

2. SAME. *Rulings as to evidence.*

   The Chancellor's error in the rejection of evidence is cured by the action and report of the Court of Chancery Appeals, that it took all the evidence into consideration in its findings. (*Post, pp. 247, 248.*)

3. FIRE INSURANCE. *Evidence when policy is ambiguous.*

   Where there is ambiguity as to date of payment of premiums in a fire policy, it is proper to consider the application and the premium notes in connection with the policy, to ascertain its true meaning in this respect. (*Post, p. 248.*)

   Case cited: Dale *v.* Ins. Co., 95 Tenn., 38.

4. SAME. *Date of payment of premiums.*

   Premiums are payable on the first day of March of each year, under a policy running several years, and providing that premium installments shall fall due "on the first days of March of 1893, 1894, 1895, and 1896." (*Post, p. 248.*)

5. SAME. *Policy not forfeited for nonpayment of premium.*

   Under a policy taken out March 10, 1892, to run until March 10, 1897, and providing that premiums should be paid on the first day of March of each year, and the company should not be liable for a loss occurring while a premium was due and unpaid, the failure to pay the premium due March 1, 1894, will not relieve the company from a loss occurring March 9, 1894. Each

Kimbro v. Insurance Co.

premium covers one year from the next succeeding tenth of March.  (*Post, pp. 249–251.*)

FROM  HAMILTON.

Appeal from Chancery Court of Hamilton County. T. M. McConnell, Ch.

W. T. Murray for Kimbro.

White & Martin for Insurance Co.

Wilkes, J.    This is an action to recover upon a fire insurance policy.    The Chancellor gave judgment for a portion of the amount covered by the policy, to wit, $375 and interest from filing the bill.    The Court of Chancery Appeals reversed this judgment, denied the insured any relief, and dismissed his bill, and the cause is before us on his appeal and quite a number of assignments of error.

The first and second errors assigned are, in substance, that the Court of Chancery Appeals failed to find and report the facts of the case so as to enable this Court to properly apply the law, and that it failed to recite certain evidence to which exception was taken in the Court below.

These assignments are not well made.    The report of the Court of Chancery Appeals as to the facts and law is quite full, and fairly presents the

case in its legal aspect.    While the evidence is not set out verbatim, it is not necessary it should be done, so that the questions at issue and those settled are clearly presented, and the same may be said of the evidence as to which exception was made.    Besides, if this contention were good, the remedy is an application to the Court of Chancery Appeals for a more full and definite finding.

The third assignment is not well made.  This is in regard to the admission of certain evidence.  The Court of Chancery Appeals report that they considered all the evidence, both that objected to and that not excepted to, as it considered it competent and admissible in one aspect of the case.  Then the appellants had the benefit of the testimony to the rejection of which they excepted, and the appellant has no ground to complain.

The materiality of this question as to the testimony arises out of the fact that appellant desires to add to the policy, and to show that the real contract with the insurance company was not fully embodied in the policy; that blanks were improperly filled in by the agents of the insurance company, and that fraudulent statements were made to procure the same, and that conditions as to time of payments of premium were waived.

The Court of Chancery Appeals states that it did consider all the evidence objected to as if it was competent, but was still of opinion, upon all the evidence, that the appellant had not, as a fact,

made out his contention, so that there is no error in this matter of testimony to which the appellant can now assign any error. If there was error, it was against the insurance company.

The fourth assignment is that it was not proper to consider the application, the policy, and premium notes together, in order to arrive at a proper construction of the policy as to when the premium was due. This was not error, but was correct when there was any ambiguity in the policy, as may be said to be the case here. *Dale* v. *Cont. Ins. Co.*, 11 Pickle, 28–52.

The fifth assignment is that the Court of Chancery Appeals incorrectly held that the premiums on the policy, by its terms, were payable on first of March each year, and that the language implied that such premiums might be paid on any day of March near the first. The language of the policy is that the installment note of $23.80 shall fall due as follows: $5.95 on the first days each of March, 1893, 1894, 1895, and 1896. While the language is awkward and ambiguous, it evidently means that the premium is due on the first day of March of each year, and the plural is used not to designate more than one day of the month, but to designate one day in each year. All the papers, we think, are in accord with this view.

The sixth assignment is a general one—that the Court of Chancery Appeals erred in reversing the Chancellor and dismissing the bill, and virtually em-

braces the others. The grounds for this assignment have already been considered separately. The facts are that the policy was taken out March 10, 1892, to extend to March 10, 1897. The premium was to be paid on the first day of March each year, as we think from the policy and all other papers, and as found by the Court of Chancery Appeals.

The policy provided against liability if a loss occurred while a premium note was past due and unpaid, and the note had a like provision. The fire occurred March 9, 1894. The premium due March 1, 1894, was then past due and unpaid, and the Court of Chancery Appeals was of opinion, therefore, there was no liability.

Looking to the findings of the Court of Chancery Appeals, and agreeing therewith as we do, still we are of opinion it is in error in holding that the company is not liable. Looking to the policy and all the papers, we are of opinion that, while they provide that the note shall fall due on the first of March each year, and not later, still it is, we think, perfectly evident that the policy could not lapse or be forfeited until the tenth of March each year, which was the limit or expiration of its life.

The cash payment of $4.20 was clearly intended to keep the policy alive for one year from the tenth of March, 1892. The first installment note of $5.95 was to be paid by the first of March, 1893, and was to keep the policy alive for the second year— that is, until March 10, 1894. While, therefore,

the insurance company had ·a right to treat the policy lapsed and forfeited on and after March 1, 1894, if the note then due was not paid, such lapse could not take effect until the termination of the time to which it was paid up—that is, the tenth of March, 1894. In other words, the · installment note due March 1, 1894, was to pay for insurance for the year commencing March 10, 1894, and · ending March 10, 1895, and could not affect the insurance up to March 10, 1895, which was already paid up.

The installments were payable in advance, yearly, on the first of March, but, when paid, they · insured the property until the tenth of March of each succeeding year, so that when the last note should be paid on the first of March, 1896, it would make the insurance effective until the tenth of March, 1897. It could not be contended that if the loss occurred between the first and tenth of March, 1897, that the property was not covered and the insurance not in force, all notes being paid, and yet, if we hold that the advance payment on the first of March only kept the policy alive till the first of March thereafter, then the payment of the same premium on March 1, 1896, would keep it alive ten days longer than the similar payments made the years before. That the policy would be alive and extend to March 10, 1897, at twelve o'clock noon, there can be no doubt under its express provisions.

The clear construction of the policy is that each yearly installment was to pay for insurance for one

year, and that this year was to run from the tenth of March to the tenth of March in each year, though the yearly premium was payable in advance on the first of March. Why the cash premium was only $4.20 for the first year is not explained, and we need not stop to consider, as it is immaterial.

The decree of the Court of Chancery Appeals is reversed, and the decree of the Chancellor affirmed with interest and cost.