# MARY B. MONAHAN *vs.* THE MUTUAL LIFE INSURANCE COMPANY OF BALTIMORE.

*Life Insurance—Misrepresentation in Application—Warranty—Condition Avoiding Policy—Waiver by Acceptance of Premiums—Facts Presumed to be Known by Insurer—Estoppel—Tender of Premium.*

Code, Art. 23, sec. 196, provides that whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought on a policy issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk. *Held*, that whether a mis-

representation was of a matter material to the risk is ordinarily a question for the jury to determine.

A policy of life insurance issued to a beneficiary provided that it should be void if there was then in force on the life of the insured a policy previously issued by the company, unless the policy first issued contained an indorsement signed by the president or secretary, authorizing the second policy to be in force at the same time. In the application for the policy the beneficiary stated that the proposed life was not then insured in the company. This statement was not known by the appli. cant to be false, but there was in fact then in existence another policy on the same life. The insurer accepted payment of forty-one premiums from the beneficiary. In an action on the second policy, *held*, that the acceptance of the premiums constituted a waiver of the right to declare the policy void on the ground that the first policy contained no endorsement authorizing the second to be issued, since the existence of the first policy was a fact which ought to have been known by the insurer and was not known by the beneficiary.

*Held*, further, that the circumstance that the insurer was prevented from knowing that there was a prior outstanding policy on the same life by reason of the method it pursued in keeping its books does not operate to prevent the application of the doctrine of waiver in this case, because this fact of which it was ignorant was one which it ought to have known, whether revealed by its books or not.

*Held*, further, that the tender by the insurer to the beneficiary after the death of the insured of the forty-one premiums paid in does not relieve the insurer from liability under the policy.

The waiver of a cause of forfeiture of a policy of life insurance by the acceptance of premiums is not based on contract but on the estoppel of the company to insist on a condition of the policy inconsistent with the acceptance or retention of the premiums.

The rule that in life insurance contracts a misrepresentation of facts material to the risk, which from their nature were known or may reasonably be presumed to be known by the applicant but not by the insurer, will render a policy invalid, does not apply where the misstatement concerns a fact peculiarly within the knowledge of the insurer and not within the knowledge of the applicant.

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to rule as a matter of law that the defendant company is estopped from denying its liability on the policy sued on in this case if the Court sitting as a jury shall find from the evidence that

the plaintiff had no knowledge of prior insurance on the life of the assured issued by the same company.  (*Refused.*)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to rule as a matter of law that the defendant company having issued the first policy on the life of Mary J. Marion it is presumed that said company had knowledge of said fact and that the issuance of a second policy on the same life to one who had no knowledge of such prior insurance and the acceptance of premiums by the said company is to be construed as a waiver of so much of section 4 of said policy as relates to prior insurance.  (*Refused.*)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Cout to rule as a matter of law that the statement made by the plaintiff in her application for insurance on the life of her mother, Mary J. Marion, as to prior insurance in the same company, was a mere representation, and not a warranty unless the Court find that the plaintiff knew her statement to be untrue, and that it was made for the purpose of deceiving and misleading the defendant into issuing more insurance than it would otherwise have done.  (*Granted.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court to rule that the policy sued on being a second policy, and the first policy on the same life not having been endorsed as provided by condition No. 4 of the policy, that the said policy sued on is therefore void, and the plaintiff cannot recover thereunder in this action and the verdict of the Court must be for the defendant.  (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Howard M. Emmons* and *Edwin H. Brownley,* for the aplant.

The statement made by the plaintiff in her application, as to prior insurance on the life of insured in the same company, is a mere representation and not a warranty, and same was not material to the risk.  (Code, Art. 23, sec. 196.)  The Court

below, having granted the third prayer of the plaintiff, decided that: "The statement made by the plaintiff in her application for insurance on the life of her mother, Mary J. Marion, as to prior insurance in the same company, was a mere representation and not a warranty unless the Court find that the plaintiff knew her statement to be untrue and that it was made for the purpose of deceiving and misleading the defendant into issuing more insurance than it would otherwise have done."

The agreed statement of facts shows that the plaintiff had no knowledge of prior insurance on the life of her mother in this company. By refusing to grant the first prayer of the defendant, which raised the question, the Court further decided that as a matter of law such representation *was not material to the risk. Md. Casualty Co.* v. *Gehrmann*, 96 Md. 649. It is submitted, therefore, that the case of *Bankers Life Insurance Company* v. *Miller*, 100 Md. 1, relied upon by the defendant, has no application to the present suit, as in that case this Court held that the representations therein made *were* material.

As to the general principle that a waiver of a condition in a policy of insurance may be by parol, even though the policy requires the same to be in writing, reference is made to *Md. Fire Insurance Co.* v. *Gusdorf*, 43 Md. 506; *Germania Life Insurance Co.* v. *Koehler*, 168 Ill. 305.

The contention of the appellant, as raised by her second prayer, is: That the company having issued its second policy and accepted premiums thereunder, with no knowledge on the part of the appellant as to the existence of a first policy, that such action on the part of the company is a waiver of its right to insist upon the enforcement of the condition of the policy requiring the endorsement upon the first policy to be made in writing. *Cooley, Briefs on the Law of Insurance*, pp. 2695 and 2696.

An insurance company is chargeable with knowledge of its own records to the extent that it will be imputed to have knowledge of the existence of a prior policy, if such policy were issued by the company. *Cooley—Briefs on Law of In-*

*surance*, p. 2543; *Joyce on Insurance*, sec. 2488. *Lanigan* v. *Prudential Insurance Co.*, 63 Hun. 408; *Rowley* v. *The Empire Insurance Co.*, 36 N. Y. 550, 555; *Emlaw* v. *Travellers Insurance Co.*, 108 Mich. 554; *Mutual Life Insurance Co.* v. *Nichols*, 24 S. W. Rep. 910; *O'Rourke* v. *John Hancock Life Insurance Co.*, 23 R. I. 457; *Morrison* v. *Wisconsin, &c.*, 59 Wis. 162.

Can an insurance company deny its liability on a policy of insurance issued by it to a person who had no knowledge of the existence of any prior insurance issued by same company on same life to another person?

In other words, is an applicant for insurance on the *life of another* bound to know of the existence of other insurance held on the same life by other persons, when the facts as to such other insurance are in possession of the insurance company?

The defendant below, contends that the answer of the plaintiff in her application was a warranty upon which the defendant relied and should, therefore, be strictly construed as against the plaintiff. If the answer of the appellant had caused the concealment of something, whether intentional or otherwise, of a fact material to the risk of which the company had no knowledge, *actual or implied*, that contention might, with propriety be sustained; but in the case at bar, the evidence shows the appellant was stating what was the truth, so far as she knew, and the proof of the falsity of such statements were in the possession of the defendant company, to-wit, among its own records.

As is said in *O'Rourke's case* above cited: "The purpose of warranties, in a policy is not to set a trap for applicants, but to inform the company about important facts upon which the contract is based. When, therefore, a company is in actual possession of knowledge of a fact, and by turning to its own record can assure itself better than by the imperfect memory of an applicant, it is the perversion of the purpose of a warranty to allow it to avoid a contract. It is evident injustice for one party to allow another to enter into a contract which the former knows *or is bound to know* is invalid."

The untrue statements of this character, unknown to be such to the appellant, should be carefully distinguished from such statements as occurred in *Mutual Life Ins. Co. v. Thomas*, 101 Md. 501, and in the *Bankers Life Ins. Co.* v. *Miller*, 100 Md. 1, which although unknown, perhaps, to the applicant, were statements material to the risk, involving the condition of health of the insured, and which were facts that were not within the knowledge of the company, nor could a knowledge thereof have been *imputed* to the company from an examination of its records.

The plaintiff's first and second prayers should have been granted. They declare that the company is estopped from denying its liability on the policy provided the facts disclose a lack of knowledge on the part of the plaintiff of the previous policy; and, recognize the doctrine of waiver, where the company has knowledge (express or implied) of the facts constituting the breaches of conditions, and, notwithstanding, issues the policy and collects premiums thereon. *Aufderheide* v. *German American, etc.*, 66 Mo. App. 285; *Hunter* v. *International, etc.*, 7 Ohio S. & C. P., Dec. 239; *Emlaw* v. *Travellers Ins. Co.*, 108 Mich. 554.

These cases should be distinguished from decisions affecting fire insurance policies where the "other insurance" clause is strictly construed as going to the essence of the contract, which is one of indemnity, as in the case of *Sweeting* v. *Mutual Fire Ins. Co.*, 83 Md. 63.

In this and other similar cases the fact of other insurance was not and could not from the nature of the case be known to the insurer, and in these contracts of indemnity the fact of other insurance is highly material to the risk. *Chisholm* v. *Nat. Cop. Life Ins. Co.*, 52 Mo. 213, 215. The case at bar should be likewise distinguished from those where the *applicant* is the *insured.*

*Paul M. Burnett*, for the appellee.

In the application for the second policy, the appellant, who was the applicant, was asked: "Is life proposed now insured

in this company? If so, state numbers and amounts of policies." To which the applicant answered "No." "Her answers," upon the faith of which the policy was issued without a medical examination, "were made warranties by the terms of the policy as well as by the application" and the untruth of any of such answers renders the contract void, even though made in good faith. *Mutual Life Co.* v. *Thomas,* 101 Md. 501; *Banker Life* v. *Miller,* 100 Md. 1; *Standard L. & A. Co.* v. *Sale,* 61 L. R. A. 337; *Leonard* v. *State Mutual,* 24 R. I. 7.

"The purpose of requiring a warranty is to dispense with enquiry and cast entirely upon the assured the obligation that the facts shall be as represented." *Hood* v. *Prudential, infra,* 528.

There was in fact, another policy in the same company on the life of the insured for $110. This was misrepresented in the application, and the materiality of such misrepresentation is for the Court. *March* v. *Metropolitan,* 186 Pa. St. 642; *Jeffries* v. *Life Ins.,* 22 Wall. 47, 53, 54, 56; *Lutz* v. *Metropolitan,* 186 Pa. St. 527; *Cooley's Briefs on Insurance,* vol. 3, 2083.

In the misrepresentation of a material matter it makes no difference that the applicant was ignorant of the facts misrepresented. *Bankers Life* v. *Miller, supra.*

In *March* v. *Metropolitan, supra,* the Court in passing on the questions of matertality holds that the Act has nothing to do with misrepresentations which are by their very nature material to the risk. If they were "material questions before the Act was passed, they are material still and must be so pronounced by the Court without reference to a jury." This was applied by the Court in its comments to misrepresentation of prior insurance.

This Court in *Bankers Life* v. *Miller, supra,* in commenting upon the same question, observes that if the "materiality of such representation be palpable and manifest from uncontradicted testimony or from the nature of the representations themselves, that they are material to the risk, the Court would be warranted in so instructing the jury."

In *Smith* v. *The B. & O. R. R.*, 81 Md. 415, the plaintiff, in making his application, named by him "a certain party untruthfully alleged by him to be his wife," and this Court held that this "false statement, so *manifestly material*, in view of the warranty of its truth   *   *   *   vitiates the agreement and thereby defeats the right of anyone to recover upon it."

From these decisions it would seem that the test of materiality is whether the risk would have been assumed by the company had the statements which were falsely made by the applicant in the application, through ignorance or fraud, been correctly represented.   *N. Y.* v. *Fletcher, supra.*   The company has a right to determine what is material in effecting insurance as any individual has to make a wise or unwise contract, and where the contract is clear, it is *not* for the jury to decide.   *Jeffrey* v. *Life, supra.*

The uncontradicted evidence shows that had the fact of existing insurance been truthfully represented, the policy sued upon would never have been issued.   *N. Y.* v. *Fletcher*, 117 U. S. 519; *Harford* v. *Small*, 66 Fed. 490–494; *Jeffries* v. *Life Insurance, supra.*

As the uncontradicted testimony shows the policy sued on to have been in direct violation of the condition in clause four the policy was void from the beginning, and no recovery can be had thereon unless the company waived the condition. *Hood* v. *Prudential*, 26 Pa. Superior Court, 527; *Leonard* v. *State Mut., supra; Northern* v. *Grand View*, 183 U. S. 308; *Sweeting* v. *Mutual*, 83 Md. 63; *Cleaver* v. *Traders*, 8 Am. State Rep. 908.

The contract stipulates that a waiver must be expressed and manifested *in writing* by endorsement on first policy signed by president or secretary.   Waiver cannot be urged against the company in absence of proof that it knew or had the means of knowing that a policy was out on the same life at the time the second policy was issued.   Waiver pre-supposes knowledge, and in the absence of such knowledge by the company, the contract will be strictly construed against the plaintiff who knew of the restriction when the contract was entered into.

A waiver is an intentional relinquishment of a known right, and there must appear affirmatively some knowledge on the part of the appellee of the right and an intention to relinquish it. *Ward* v. *Metropolitan*, 66 Conn. 228; *Northern* v. *Grand View*, 183 U. S. 309; *Sweeting* v. *Mutual*, 83 Md. 63, 67, 76; *Ins. Co.* v. *Wolff*, 95 U. S. 327, 330, 332, 333; *German* v. *Heiduk*, 46 N. W. 481, 483, 484; *Hook* v. *Mutual*, 28 Atl. Rep. 690; *Clevenger* v. *Mutual*, 3 N. W. 313, 320, 321; *Egan* v. *Westchester*, 42 Pacific, 611; *United* v. *Thomas*, 82 Fed. 406, 409.

There is no evidence of waiver, and that doctrine is urged against the company only upon the theory of "presumptive knowledge," and against the direct stipulation in the contract that a waiver must be expressed in writing. This contention is not borne out by the record; but if the record disclosed any grounds for argument of "presumptive knowledge" it would be equally applicable to the claimant (appellant). Whatever "presumptive knowledge" can be gathered from the evidence was with the assured. She does not deny that she knew of the condition, so she is to be presumed to have read the policy and knew what it contained. The appellee did not know of the two policies until after the death of the insured; but the policies were on the life of the mother of the assured and beneficiaries in each case were sisters, so that the appellant must be presumed to have known of the prior insurance rather than the company which had no record from which the information could be had. *Northern* v. *Grand View*, *supra; New York Life* v. *Fletcher*, *supra.*

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from the Superior Court of Baltimore City. Suit was brought by the appellant against the appellee to recover the amount payable by the latter under an insurance policy issued by it on the life of one Mary J. Marion in favor of her daughter, the appellant on this record. The Mutual Life Insurance Company of Baltimore issues industrial insurance policies. On December the third, 1904, it wrote

the policy which constitutes the cause of action in this case. The policy provides that "in consideration of the application for this policy and of the several statements and representations made therein, all of which are hereby made warranties and are hereby made a part of this contract," and in consideration of certain weekly payments and the performance of other conditions, the company will pay to the beneficiary upon due proof of the death of the insured a sum of money stipulated in a schedule annexed to the policy and marked "amount of insurance." By the fourth of the restrictions and conditions contained in or upon the policy it is declared: "This policy shall be void if * * * there is in force upon the life of the insured, a policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time." The tenth condition states that "agents (which term includes superintendents and assistant superintendents) are not authorized to make, alter or discharge contracts, or waive forfeitures, &c." The application signed by the appellant, Mary B. Monahan, contains this stipulation: "The undersigned hereby declares and warrants that the answers made below are strictly true; that they shall form the basis and become part of the contract of insurance; *that any untrue answer will render the policy null and void, &c.*" The fifteenth question propounded to the beneficiary and to which the above quoted stipulation relates, was as follows: "15. Is life proposed now insured in this company? If so, state numbers and amounts of policies," and the answer given by the appellant was: "No." The appellant paid the weekly premiums until the death of her mother in September, 1905. She then made out in due form the proofs of death in compliance with the terms of the policy and delivered them to the company. When she asked the company to pay the amount to which she was entitled under the policy, she was informed for the first time of the now conceded fact that a prior policy had been issued on the life of her mother in 1899 in favor of the appellant's sister, and that there had not been indorsed on that

policy a permission for the second policy to be issued. It is not pretended that the negative answer given by the appellant to the fifteenth question was knowingly false.

No question arises on the pleadings, and the only propositions presented for consideration by this Court are those which the rejected prayers of the appellant and the granted prayer of the appellee contain. Under an instruction given at the instance of the appellee company the trial Court ruled that the policy sued on was void because the first policy had not had written upon it an indorsement authorizing the second policy to be in force at the same time; and accordingly a verdict and judgment were entered in favor of the company. Hence this appeal.

Two grounds of defense were relied on below by the insurance company; viz.: that the statements contained in the application signed by the appellant were warranties and as the reply to the fifteenth interrogatory was in point of fact untrue, though innocently made and though believed to be true when made, the policy was, in consequence of the inaccuracy of that reply, rendered nugatory and inoperative; and secondly, that under the terms of the fourth condition or restriction the failure to have indorsed upon the first policy an authorization for the second one to be in force at the same time caused the policy sued on—the second one in date—to be void from the beginning. In answer to and in avoidance of those contentions, as respectively asserted in the appellee's first and second prayers, the appellant maintained by its third prayer, which was granted, that the statements made in the application was simply a representation and not a warranty; and by her first and second prayers—which were rejected—she asserted that the company was estopped to deny its liability on the second policy; and that its acceptance of the weekly premiums constituted a waiver of the cause of forfeiture relied on under the fourth condition.

There is a broad and material distinction between a warranty and a representation. A representation is not a part of the contract, but is collateral thereto, while a warranty is a part

of the contract. In consequence of this, while the falsity of a representation is not a ground for avoiding the contract unless material to the risk, a warranty as to any fact will preclude any inquiry as to the materiality of that fact. 16 *Am. & Eng. Ency. of L.*, 932. The legislation of many of the States, including Maryland, has modified the harsh rule respecting warranties in this class of contracts, and has swept away a group of merely technical objections to a recovery on life insurance policies (*Md. Cas. Co.* v. *Germann*, 96 Md. 648), by declaring that "whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant, shall effect a forfeiture or be 'a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." *Sec. 196, Art. 23, Code of 1904.* What is a matter material to the risk is ordinarily and generally for the jury to determine. In the case now before us the Court below ruled, in granting the appellant's third prayer, that the statement contained in the application and relied on by the appellee to defeat a recovery was not a warranty but a mere representation; and as no appeal was taken from the ruling, it is not before us for review and finally settles the law of the case on this ground of defense.

This brings us to the proposition upon which the case was decided adversely to the appellant; and that proposition is, as already indicated, that the failure to have indorsed on the first policy an authorization permitting the second policy to be in force at the same time in the same company, avoided the second policy. Like kindred clauses imposing forfeitures for other collateral causes, condition or restriction four, which is relied on to annul the policy in suit, should be strictly construed against the insurer and should be confined in its application within the narrowest limits possible; especially as it exacts from the beneficiary, at the risk of a drastic penalty, the dis-

closure of a fact which the company itself knows, or is at least bound to know, whilst the applicant, in perfect good faith and without culpability, may be wholly in ignorance of it. .This Court, in *Schlosser* v. *Grand Lodge*, 94 Md. 368, had occasion to quote with approval the strictures of the Supreme Court of the United States upon the so-called "agency clause" in life insurance contracts, and we reproduce again the observations of that high tribunal, because, although they refer to a different provision, they are none the less, applicable to the clause we are now considering, and to other similar grounds of forfeiture. "In some jurisdictions," said the Supreme Court, the agency clause, "is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policy holder, and in all, it is eyed with suspicion and construed with great strictness. We think it should not be given effect when manifestly contrary to the facts of the case, or opposed to the interests of justice." *Sup. Lodge K. of Py.* v. *Withers*, 177 U. S. 268. Whilst a misrepresentation of facts which are material to the risk and which, from their very nature, must have been known, or which may reasonably be presumed to have been known by the applicant, but not by the insurer, will render a policy issued upon the faith of their verity, invalid, because the insurer had been induced to write a liability which it would not have assumed if the truth had been frankly disclosed to it; a very different situation is presented when the misstatement concerns a fact peculiarly within the knowledge of the company and not within the knowledge of the applicant. To exonerate an insurer from responsibility on its contract merely because the applicant has misstated a fact which the insurer's own records disclose, or ought to disclose, and which the applicant has no knowledge of at all, would convert this forfeiture clause into a provision, not for the protection of the insurer against deception, but for the infliction of gross injustice upon a confiding and innocent beneficiary. All the cases which hold the contract of insurance to be vitiated by the mere misrepresentation of a

material fact, when no warranty is involved, have relation to facts which were, or which ought to have been, peculiarly within the knowledge of the applicant and which were not within the knowledge of the insurer. It would be a tedious task to review those cases and it is not necessary that it should be done.

Treating, then, this forfeiture clause—for that is what in effect it is—with the severe strictness which under the adjudged cases its harshness merits in such instances as this record exhibits, it is, *a priori*, obvious that evidence of much less probative value will be deemed sufficient to prove a waiver of this drastic provision than would be considered adequate to establish a waiver of some more reasonable or just restriction. From the date upon which the second policy was issued up to the day of the death of the insured—a period of forty-one weeks and some days—the appellant made forty-one payments of weekly premiums to the company, and the company received and retained those payments without a suggestion or an intimation that the policy under and on account of which the payments were made was in any way questioned or disputed by it. It could rightfully collect and receive those premiums from the appellant only in the event that it considered her the holder of a valid policy. If a condition of fact existed which vitiated that policy, or which precluded it from having had validity in its inception, by virtue of a term of the contract, and that condition of fact was known by the insurer, *or ought to have been known by it*, and was *not* known by the beneficiary, then the continuous receipt of the premiums by the insurer must be taken to indicate that the insurer did not rely on that condition of fact, but elected to waive the cause of forfeiture or invalidity, because upon no other hypothesis could it justify the collection of the premiums. It is undoubtedly true that a party cannot be said to have waived an objection of which he was not aware; and it has been insisted that the insurance company could not be held to have waived the provisions of clause or condition four, because it did not know when it issued the policy sued on; that it had previously written another policy

on the same life. Evidence was adduced to show that the method pursued in keeping its records and its books prevented the company from actually knowing that there was a prior outstanding policy on the same life. But that is no answer to asserted waiver. When Courts come to deal with questions of waiver in cases like the one at bar, a rigid application of the general rule requiring that there shall be actual knowledge of the forfeiture or of the existence of the cause producing a forfeiture, before there can be a waiver, will not be insisted on. *Balto. Life Ins. Co.* v. *Howard*, 96 Md. 258. Thus in the case of *Knights of Pythias* v. *Kalinski*, 163 U. S. 289, it appeared that Kalinski had been in default in paying his lodge dues though he regularly paid his assessments on his benefit certificate. Under the laws of the order his delinquency in paying his lodge dues forfeited his insurance under the benefit certificate. After his death his beneficiary sued upon the certificate, and the suit was defended on the ground that his failure to pay his lodge dues forfeited his insurance under the benefit certificate. It was answered that by the receipt of his assessments the forfeiture was waived. In reply to this it was contended that the grand lodge had accepted the assessments —which is merely another term for premiums—without knowing that Kalinski was in default to the local lodge for dues, and that being ignorant of the default it could not be held to have waived it. The Supreme Court of the United States, speaking by MR. JUSTICE BROWN, said in dealing with that feature of the case: "Granting that the continued receipt of premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company, (*N. L. L. Ins. Co.* v. *Davis*, 95 U. S. 427; *Bennecke* v. *Conn. M. L. Ins. Co.*, 105 U. S. 355), this is true only of such facts as are peculiarly within the knowledge of the assured. If the company ought to have known of the facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse." · In *Tobin* v. *West. Mut. Aid Soc.*, 72 Iowa, 261, it was held that the defendant had

waived a forfeiture for non-payment of assessments by receiving and retaining subsequent annual dues, though ignorant of the grounds of forfeiture. The Court said: "The fact that the company in receiving and retaining the money did not know of the previous grounds of forfeiture, or intend to waive the same, is not material   *   *   *   By the exercise of the slightest diligence the defendant could have ascertained the alleged failure of Mrs. Tobin to pay assessments, and, by the return of the money collected during the months intervening before her death, prevented her from being lulled into security by the misleading acts of the company."

It will not do to say that in order to avoid expense the company's books were kept in such a manner as not to disclose the names of the assured, and, therefore, that it could not know when the second policy was issued that there was a prior one of its own, outstanding on the same life. If the company, to serve its own purposes, saw fit to adopt an imperfect or incomplete system of recording its policies whereby its books failed to show what, if prudently and methodically kept, they would have revealed with respect to the names of the insured, it certainly should not be permitted to set up its own ignorance, resulting from its own negligence, as a valid reason for the non-application of the doctrine of waiver. It cannot be doubted that the company ought to have known the names of the persons upon whose lives it carried risks; and it is obvious that a proper attention to its business would have apprized its officers of those names, and consequently it has no right to set up its voluntary and censurable ignorance of those names as an excuse for not knowing that a prior policy had been issued by it on the life of Mary J. Marion. It *ought* to have known that it had issued the first policy, and it will not be heard to say that it *did not* know that fact, merely because it kept its records in such an imperfect way that they did not contain the names of the insured. It must be treated as knowing what it ought to have known. It did issue the first policy and it was in force when the second was written; and the company knew that fact because it was bound to know it, whether its books revealed it or not.

Waiver by the acceptance of a premium is not based upon contract, but on estoppel of the company to insist on conditions of the policy inconsistent with the acceptance or retention of the premium. With the first policy outstanding and without no indorsement thereon of an authorization for the issuance of a second one on the same life, the insurer being chargeable with the knowledge of those facts because it was bound to know them, it accepted forty-one premiums from the beneficiary named in the second policy, and that acceptance estops the company to insist on the fourth condition to vacate the later policy, because the act of accepting and retaining the premiums on the second policy was wholly inconsistent with the terms of that condition or restriction. The tender by the company to the appellant after the death of the insured, of the amount of the forty-one premiums paid in, cannot relieve the appellee from its liability under the policy sued on.

The first and second prayers presented by the appellant and rejected by the lower Court ought to have been granted because they correctly state the law on the subject of estoppel and waiver. In consequence of the error committed in rejecting those prayers and because of the further error which the Court fell into by granting the appellee's second prayer, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed, with costs above and below, and new trial awarded.*

(Decided February 15th, 1906.)