ANNIE MELICK, APPELLANT, v. METROPOLITAN LIFE
INSURANCE COMPANY.

Argued February 19, 1913—Decided June 8, 1913.

1. If the language of a forfeiture clause in a policy of insurance
   admits of either of two constructions, one unreasonable and
   grossly oppressive to the insured, and the other fair and rea-
   sonable to both parties, the latter will be held to be the meaning
   of the contract.

2. If under a policy thus construed the insurer, having the option
   to declare it void, permits the insured to make the weekly pay-
   ments called for by the policy without notice of the exercise
   of such option and under the impression that such payments
   are premiums on a valid insurance, the act of the insurer in
   accepting such payments may amount to a continuing repre-
   sentation to its policyholder that the impression under which
   the payments were made is the correct one.

3. One, who seeing that another is acting under a misapprehension
   which it is his duty to correct, seeks to profit by it, seeks an ad-
   vantage from his own wrong.

On appeal from the District Court.

This is an action brought on a life insurance policy by the
beneficiary named therein.

Number of policy, 45295500; date, August 14th, 1911;
name of insured, Johanna Essig; name of beneficiary, Annie
Melick (sister); weekly premium, twenty cents; amount of
insurance, $124.

The weekly premium was regularly paid until the death
of the insured on May 1st, 1912.

The policy contained the following condition:

"Unless otherwise stated in the blank space below in a
waiver signed by the Secretary, this Policy is void if the in-
sured before its date has been rejected for insurance by this
or any other company, order or association, or has been at-
tended by a physician for any serious disease or complaint;
or has had before said date any pulmonary disease, or
chronic bronchitis, or cancer, or disease of the heart, liver or
kidneys; or if any Policy on the life of the insured has been

issued by this Company and is in force at the date hereof, unless this Policy contains an endorsement signed by the Secretary that such prior Policy may be in force. The Company shall not be presumed or held to know of the existence of any previous Policy, and in such case the issue of this Policy shall not be deemed a waiver of this condition.

"Permission granted to hold Policy numbered 45074331.

"JAS. S. ROBERTS,

"*Secretary.*

"If this Policy is or shall become void, all premiums paid shall be forfeited to the Company, except as provided under 'Privileges and Concessions to Policyholders.'" This concession relates to surrenders made within two weeks after issue of policy.

At the time the policy was issued there was in force on the life of the insured in the same company policy No. 10901685, dated May 22d, 1899.

The company obtained a nonsuit upon the ground that under the foregoing condition the existence of this earlier policy rendered void the policy on which suit was brought.

Before Justices GARRISON, SWAYZE and MINTURN.

For the appellant, *Samuel Press.*

For the appellee, *McCarter & English.*

The opinion of the court was delivered by

GARRISON, J.  The meaning of a written contract is determined by the application of established canons to the language employed by the contracting parties. Where such contracting parties are, on the one hand, an insurance company that has formulated the contract in advance with the business foresight and legal advice at its command and, on the other, a person who, upon the presentation of such contract to him, must accept or reject it with no other aid than his own limited experience and lack of legal knowledge, a further

canon is invoked which is thus stated in our decisions. "It has become a settled rule in the construction of contracts of insurance," said Mr. Justice Depue, in *Carson* v. *Jersey City Insurance Co.*, 14 *Vroom* 300, "that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy." This language is quoted with approval in the opinion delivered in the Court of Errors and Appeals in the case of *Hampton* v. *Hartford Fire Insurance Co.*, 36 *Id.* 265, with the additional declaration: "The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms and words used to express it." In *Snyder* v. *Insurance Company*, 30 *Id.* 544, it was said: "Policies of insurance against fire are taken out by all classes of people, educated and uneducated, and no rule of law is more salutary than that conditions in these instruments expressed in terms ambiguous and capable of misleading shall not be allowed to avoid the contract." In the more recent case of *Mackinnon* v. *Fidelity and Casualty Co.*, 43 *Id.* 29, it is pointed out that "the doctrine upon this subject arises from the relative position of the parties. * * * Such questions are formulated by the insurer under circumstances that admit of their being clear and direct. The purpose for which they are to be used is thoroughly understood and presumably they are the result both of experience and forethought. On the other hand, they are submitted to applicants for accident insurance who as a class are not experts in matters of this sort or in the construction of language by other than the simplest rules, to be answered under conditions that are, to say the least, none too favorable for critical examination." If these judicial comments and precepts are properly applied to ordinary life insurance, to accident insurance and to fire insurance, with how much more force are they applicable to that class of persons who insure their lives for small sums by the payment of weekly premiums. If a canon of construction, based upon the gross

disparity between the contracting parties is ever applicable, it is to this class of cases.

Guided, indeed controlled, by these considerations, we approach the language of the condition of this policy, the first clause of which informs the insured in unmistakable language that this policy is void if the insured before its date has been rejected by this company. The normal antithesis of this is that the policy which is void if the insured has been rejected will not be so if he has been accepted so that if this latter effect is to be given to the language that follows it must be stated in clear and unequivocal terms.

The language to which this force was ascribed by the court below is as follows: "Or if any policy on the life of the insured has been issued by this company and is in force at the date hereof, unless this policy contains an endorsement signed by the secretary that such prior policy may be in force."

The clear implication of this language, in view of its concluding clause, is that the secretary by withholding his endorsement as to a prior policy may affect the validity of such prior policy, which clearly is not so as matter of law and is in any event a matter alien to the object of the condition, which is concerned with the validity not of a prior policy but of the present policy.

I confess my inability to understand what was sought to be expressed by this provision which would seem to require the secretary to do, for an alien purpose, an utterly nugatory act, viz., to permit a prior policy if in force to be in force. However this may be, the language of the condition makes it sufficiently clear that the company did not undertake to be bound by the mere act of its agent in issuing a policy if the company already had a policy in force on the same life, and it is equally clear that the question whether such later policy would be accepted by the company or be treated as void was committed solely to the decision of the secretary of the company; and hence that the mere issuing of the policy should not foreclose the company in this respect. This is a perfectly reasonable and intelligible provision, for the secretary is at the home office where the records of its policies are kept,

while the soliciting agents are scattered broadcast over the land; they are therefore given no discretion in the premises, everything is left to the discretion of the secretary.

The agents indeed issue policies which contain certain restrictions upon their power to bind the company, and where the restriction is absolute the policy is void in case of its violation as in the case of a person previously rejected, or in the case of certain diseases, &c., but in the case of a previous policy in the same company the restriction is not absolute but only qualified, and the policy may or may not be void at the option of the insurer, to be determined by the action of its secretary.

In fine, the agent writes the risk upon the proviso that the company may refuse to carry it. That the company has no absolute rule or policy against such risks is shown by the fact that in this very case a prior policy, No. 45074331, was recognized as an existing insurance. The same likewise appears from the fact that the present policy which contains the entire agreement is based upon no statement or answer, representation or warranty of the insured, but solely on the act of the agent in issuing the policy with the reserved right of the home office to reject it.

Apparently, the agent has no duty or authority to put questions to the insured who, so far as appears, was neither interrogated nor informed with respect to prior insurance with the company or the effect thereof, although the fact was that for more than twelve years the company had been in receipt of her weekly premium on policy No. 10901685. An act thus repeated hundreds and hundreds of times normally carries with it a conclusive presumption of knowledge.

The company having thus reserved to itself the right to refuse to be bound by a policy issued by its agent, it is reasonable that an interval after such issuance be afforded the company in which to arrive at its decision and to exercise its option, which may be to accept the risk, notwithstanding such prior insurance or may be to decline it for that reason. This we take it is the fair construction to be put upon the condition of the plaintiff's policy, a construction that affords all

reasonable protection to the company and at the same time casts upon it the duty of notifying its policyholder or its collecting agent of the decision thus reached or of abiding by the legal consequences of its omission or neglect in this respect.

The company knows the contents of its own policies, it knows or has the absolute means of knowing the names of its policyholders and the state of their insurance; it knows that policyholders of this class do not take out new policies and make the weekly payments thereon with any conception that such policy is void and such payments forfeited to the company week by week. The only construction that would absolve the company from notifying its policyholder that his policy has been rejected or notifying the agent of the company not to collect the weekly forfeited premiums thereon is one that is so abhorrent to every sense of justice that in deference to the directors of the company so unworthy a scheme should not be imputed to them if the language of their policy admits of a construction that is consistent with a purpose to deal honestly with their humble clients. That there is such a construction I have just indicated, and the only question is whether such construction is repugnant to the concluding clause of the condition, viz., "the company shall not be presumed or held to know of the existence of any previous policy, and in such case the issue of this policy shall not be deemed a waiver of this condition." So far from being repugnant to the construction I have suggested this provision exactly accords with such construction. It deals with the issuance of the policy, the presumptions thence arising and its effect as waiver, i. e., with conditions that arise from the act of the agent and are not to be imputed to the company that has reserved the right to have its secretary and not its agent decide upon the effect to be given to such prior insurance. Actual knowledge by the company through its secretary, and the duty to acquire such knowledge by the ample means at his command, are not affected by the language of this clause, nor is the effect of the continued payment and receipt of premiums affected by it; hence, as to these, the ordinary pre-

sumptions of fact obtain and give rise to questions of law or fact that cannot be disposed of upon the meager record that is before us in this judgment of nonsuit.

It is also to be observed that the situation presented by the issuance of this policy, and the continued collection of premiums upon it which the policyholder was clearly paying under the impression that her policy was valid has, in one of its aspects, the force of a continuing representation by the company that its policyholder was right in the impression under which she continued to pay her premiums. If such a representation be true, the policy is in fact valid; if it is false, the company should not be permitted to take advantage of its own false representation. "In order to establish a case of false representation," as was said in *Lomerson* v. *Johnston,* 2 *Dick. Ch. Rep.* 312, "it is not necessary that something which is false should have been stated as if it were true. If the presentation of that which is true creates an impression which is false, it is, as to him who, seeing the misapprehension, seeks to profit by it, a case of false representation." With what motive would this humble policyholder have paid over her weekly pittance to the agent of the defendant unless she was under the impression that it was the premium on a valid insurance, and knowing that such payments were made under this impression, how can the defendant, under the doctrine stated, take advantage of it by denying that such payments were in fact what it permitted her to believe that they were?

The questions thus arising, whether of estoppel, waiver or notification, were not tried out in the court below because of the construction placed on the contract which led to the nonsuit.

That construction we hold to be erroneous for the reasons stated and send the case back for trial upon such questions of law or fact as may arise under the contract as we have construed it. The case of *Bennett* v. *St. Paul Fire Insurance Co.,* 26 *Vroom* 377, and the other cases cited by the appellee are without application to the language of this policy or to the facts shown by the state of the case which raise no ques-

tion of knowledge or representation by an agent or waiver by his act or any concealment or other fault on the part of the insured.

The judgment of nonsuit is reversed and the record remitted to the Second District Court of the city of Newark with an award of a *venire de novo.*