W. C. KIDD *v.* NATIONAL COUNCIL OF JUNIOR ORDER OF
THE UNITED AMERICAN MECHANICS
OF THE UNITED STATES *et al.*\*

*(Nashville.   December   Term,   1916.)*

1. **INSURANCE.  Construction of policy.  Intemperance clause.**
A mutual benefit policy not collectable if death be caused by intemperance or other immoral conduct will be liberally construed to provide indemnity. (*Post, pp.* 399, 400.)

Cases cited and approved:   State Ins. Co. v. Hughes, 78 Tenn., 461; Kimbro v. Insurance Co., 101 Tenn., 445; Aetna Life Ins. Co. v. Davey, 123 U. S., 739;   Aetna Life Ins. Co. v. Ward, 140 U. S., 76;   Knights of Pythias v. Allen, 104 Tenn., 623.

Cases cited and distinguished:  Davey v. Aetna Life Ins. Co., 38 Fed., 650;  Conn. Mut. Life Ins. Co. v. Attee, 3 Ohio Cir. Ct. R., 650;   Miller v. Mutual Benefit Ins. Co., 34 Iowa, 222;   Tatum v. State, 63 Ala., 147;   Mowry v. Home Life Ins. Co., 9 R. I., 346.

2. **INSURANCE.  Construction of policy.  Intemperance clause.**
A mutual benefit life insurance policy not collectible if death be caused by intemperance is not avoided where insured drank a reasonable amount in good faith for medical purposes, though he was made drunk and died as a result. (*Post, pp.* 399, 400.)

3. **INSURANCE.  Construction of policy.  Mutual benefit.**
Recovery will not be denied upon a mutual benefit life insurance policy unless its language, naturally construed, so requires. (*Post, p.* 400.)

Case cited and approved:  Bracket v. M. B. A., 154 Ky., 340.

4. **INSURANCE.  Burden of proof.  Violation of policy.**
Defendant insurance company has the burden of proving that a mutual benefit policy has been avoided by a violation working a forfeiture. (*Post, p.* 400.)

5. **INSURANCE.  Sufficiency of evidence.  Death from intemperance.**
Evidence that insured was found in a drunken condition, dying three days later, the hospital interne assigning acute alcoholism

---

\*On the scope and effect of provisions in policies of insurance forbidding use of intoxicating liquor see notes in 15 L. R. A. (N. S.), 206;   25 L. R. A. (N. S.), 1241.

Kidd v. Nat. Council, J. O. U. A. M.

as the cause, is insufficient to avoid a mutual benefit policy on ground that insured died as the result of intemperance, where no other intemperate acts were shown. *(Post, pp.* 400, 401.)

6. INSURANCE. Statutory penalty. Insurer's good faith.
Defendant insurance company is not liable for the statutory penalty for refusing in good faith to pay a claim for which it was afterward found liable. (*Post, p.* 401.)

Cases cited and approved: Sullivan v. Insurance Co., 135 Tenn., 646 .

FROM DAVIDSON.

Error to the Chancey Court of Davison County.— JNO. ALLISON, Chancellor.

MANIER & CROUCH and F. M. GARARD, for plaintiffs in error.

PENDLETON & DEWITT, for defendant in error.

MR. SPECIAL JUSTICE CLARK delivered the opinion of the Court.

This suit was instituted by complainant against defendants to recover $500 claimed by complainant as the beneficiary in and owner of a benefit certificate or policy of insurance issued by defendant National Council, J. O. U. A. M., on the life of complainant's father, W. A. Kidd. Under the laws of the order, the benefit certificate is not collectable if the death of the member is "the result of intemperance or other immoral conduct." The defendant re-

lies on this provision, and insists that the death of the insured was ''the result of intemperance,'' and therefore, under the terms of the policy, it is not liable. The question for decision is: Was the death of insured the result of intemperance in the sense that the provision is used in the policy?

On October 10, 1913, the insured was found in a saloon in the city of Nashville, and, in the language of the witnesses, ''he was very drunk.''    He was placed by officers in a patrol wagon and carried to the police station and kept in a cell that night.    No charge was lodged against him, and the next morning, about seven o'clock he was released.    It was a bad, rainy morning, and assured asked permission to remain in the building, which was granted, and he remained.    About eleven-thirty a. m. he came to the officer in charge, stated that he did not feel like going out in the rain, and asked permission to go back in the cell and lie down, which permission was granted, and he went back to the cell.    On the morning of the 12th assured complained of being sick, and the officer says he was sick, and he was sent to the hospital in a patrol wagon.    On October 15th he died.    An interne at the hospital made out the death certificate and gave as the cause of death ''acute alcoholism.'' The interne also testifies that assured died from the effects of acute alcoholism.    So far as the record shows, the instance referred to is the only occasion on which assured was ever drunk or intoxicated. No witness testifies to ever having seen him take a drink

of any intoxicating beverage, or to ever having seen
him at any time other than the occasion above re-
ferred to, when he appeared to be drinking or at all
under the influence of liquor.    In fact, it does not
appear from the record in this case that any witness
saw him drink any intoxicating liquor or any liquor
of any kind on the occasion when he was found drunk
in the saloon.    The testimony is that he was very
drunk when found in the saloon, and had to be carri-
ed to the patrol wagon, but how much or what kind of
intoxicants he drank or how long he had been drunk
does not appear.  · The lieutenant  of  police  says
when he was brought to the police station his face had
a ''fiery'' appearance like that of a person who had
been drinking to excess for some time, but he says
that the fiery appearance does not necessarily in-
dicate that a person has been drinking; that he has
seen people with a similar fiery appearance of the
face who did not drink at all.    It further appears
from the proof that the assured was formerly a rail-
road man and earned good wages.    About two years
before his death he lost one of his legs.    The rail-
road company paid him some amount as damages be-
cause of his injury, and he retired from the service.
For quite a while after his retirement he had a
healthy, prosperous appearance, but for a short
time, probably a  few weeks, prior to his death he
had an uncouth, unclean appearance, and, as one of the
witnesses expresses it, looked like he was sick, looked
like he was down and out, but, except on the one oc-

cassion referred to, no witness ever saw him intox-
icated or ever saw or heard of his taking a drink.
Whether on the occasion he is proven to have been
drunk he took one drink or many drinks does not
appear.    It does not appear that he had ever been
in this saloon or any other saloon on any occasion
other than the one referred to.

As stated, the opinion of the physician is that as-
sured died of acute alcoholism.    Alcoholism is a dis-
eased condition of the system brought about by the
excessive use of alcoholic liquors.    Acute means
coming speedily to a crisis—opposed to chronic.  See
Webster's New Int. Dic.    Then acute alcoholism
would seem to be a diseased condition of the system
coming speedily to a crisis and brought about by the
excessive use of alcoholic liquors.    One of the mean-
ings given to the word "intemperance" is:  Habitual
or excessive indulgence in intoxicants."    Webster's
New Int. Dic. In *Davey* v. *Aetna Life Ins. Co.* (C. C.),
38 Fed., 650, it was held that:

"Where a policy of life insurance contains the pro-
viso that, if the insured 'shall become so far intem-
perate as to impair his health, or induce delirium
tremens,' the policy shall become null and void, it is
not nessessary for the defendant to prove that the
insured had become habitually intemperate for any
length of time before his death, in order to avoid the
policy; but the condition will be broken if it appear
that the insured died from the effects of a single
drunken debauch, continued for one day or ten days,

immediately preceding his death, and although before that time he may have led a temperate, or even a strictly abstemious, life."

And in *Conn. Mut. Life Ins. Co.* v. *Attee,* 3 Ohio Cir. Ct. R., 650, it was held that:

"Where a policy of life insurance provides that it shall be void if insured shall become so far intemperate as to impair his health or induce delirium tremens, it is avoided by a single debauch which impairs insured's health."

And in the case of *Miller* v. *Mutual Benefit Ins. Co.,* 34 Iowa, 222, it was said:

Death "from intemperance" within the meaning of a life policy releasing the insurer from liability for the death of the insured caused by intemperance includes death from a cause occasioned or produced by the excessive use of intoxicating liquor by the insured.

But in *Tatum* v. *State,* 63 Ala., 147, it is said:

"If the habit is to drink to intoxication when occasion offers, and sobriety or abstinence is the exception, then the charge of intemperate habits is established, . . . and it is not necessary that this custom should be an everyday rule."

And in *Mowry* v. *Home Life Ins. Co.,* 9 R. I., 346, the court said:

"Intemperance does not necessarily imply drunkenness. It is defined to be the use of anything beyond moderation, but the word 'intoxicated' means to become inebriate or drunk."

Ordinarily when one drinks intoxicating liquors to such an extent that he is made drunk he would be considered as having drunk to excess. But upon the proof in this case can the court say that the insured died as the result of intemperance? The rule for the construction of the contract under consideration is that, having indemnity for its object, it will be liberally construed to that end. *State Ins. Co.* v. *Hughes,* 10 Lea, 461; *Kimbro* v. *Insurance Co.,* 101 Tenn., 245, 47 S. W., 413. It is a well-known fact that the effect produced by alcoholic liquors depends to some extent on the condition of the system at the time the liquor is taken. It is also a fact that one small drink of whisky may make one person drunk, when a large quantity—a half dozen drinks—of the same whisky would not intoxicate another person. So far as appears from the proof, up to the time deceased went into the saloon from which he was taken he had led a strictly temperate life. He may not have taken more than one drink of whisky, and that may have made him drunk. Whether he drank the whisky that he did drink for medicinal purposes or simply to satisfy a desire for same does not appear, and the court cannot presume. What his condition was at the time he went in the saloon does not appear. If the insured drank only a reasonable amount of intoxicating liquor, and drank that in good faith for medical purposes, and he was made drunk thereby and died as a result of same, or from acute alcoholism caused by the whisky so drunk, the policy would not

be forfeited. *Aetna Life Ins. Co.* v. *Davey,* 123 U. S., 739, 8 Sup. Ct., 331, 31 L. Ed., 315; *Aetna Life Ins. Co.* v. *Ward,* 140 U. S. 76, 11 Sup. Ct., 720, 35 L. Ed., 371; *Knights of Pythias* v. *Allen,* 104 Tenn., 623, 58 S. W., 241.

A recovery will not be denied upon a mutual benefit certificate unless required by the language of the contract naturally construed. *Bracket* v. *Modern Brotherhood of America,* 154 Ky., 340, 157 S. W., 690, 45 L. R. A. (N. S.), 1144. Giving the language of the certificate under consideration its natural construction, a recovery will not be denied upon the facts proven.

Under the rule of construction above announced, where an insurance company defends upon the ground that the assured has violated some condition of the policy the violation of which worked a forfeiture, the proof that the condition was violated should be affirmative, and presumptions will not be drawn from general terms used by witnesses.

In addition to what has been stated above, there is no proof that assured had any whisky in his possession when he was carried from the saloon on October 10th. He remained at the police station two nights and one day, and there is no proof that he took any intoxicant of any kind while at the station or that he was at all intoxicated after the night of the tenth. He remained at the station during the day of the 11th and that night of his own volition and at his request, and by virtue of the kindness of the officials. On the morning of the 12th the record

shows he was sick, not drunk—so sick that the lieutenant sent him to the hospital. The only evidence that his death resulted from acute alcoholism is the testimony of a young physician who had graduated about four months before he saw the patient and who had been at the hospital less than two months. His certificate as to the cause of death was not made out until more than a month after the death of assured. He says he made the certificate from the hospital charts, but the charts are not introduced in evidence. He gave his deposition two years after the death of assured, and does not claim to remember his symptoms definitely. He says he smelled no whisky on assured's breath when he was brought to the hospital. He says that assured had cerebral œdema, which is sometimes caused by excessive use of alcohol, but may be caused by many other things, and he could not remember one sympton of deceased that was a symptom of acute alcoholism and not also a symptom of some other disease. The proof does not show with that degree of certainty required by the rule that assured's death resulted from intemperance or other immoral causes.

Complainant also seeks to recover the statutory penalty from defendant because of its failure to pay the certificate. It cannot be said that the defendant was not acting in good faith in declining to pay the certificate, and for that reason judgment for the penalty is denied. *Silliman* v. *Insurance C.,* 135 Tenn., 646, 188 S. W., 273.

The judgment of the court of civil appeals is affirmed.