COLE v. ATLANTA LIFE INS. CO.—134 S. W. (2d) 912.

Western Section.   July 14, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

Milton Swett, Jr., and Louis Zimmerman, both of Memphis, for complainant appellee.

A. A. Trigg and B. F. Booth, both of Memphis, for defendant appellant.

ANDERSON, J. The complainant, as the beneficiary in an industrial policy of life insurance on the life of her deceased sister, was awarded a recovery for the amount provided in the event of the insured's death. The defendant appealed. The only defense necessary to be noticed is grounded on the following policy provision: "Other Insurance. This policy shall be void if there shall be in force upon the life of the insured a policy previously issued by this Company, unless the first issued contract contains an endorsement signed by the President, Vice-President or Secretary authorizing this policy to be in force at the same time. The Company shall not be presumed or held to know of the existence of any previous policy, and in such case the issue of this policy shall not be deemed a waiver of this provision."

The complainant, Glory Cole, was the sister of the insured, Mary Bolton. In 1936 she procured the defendant Company to issue a policy on the life of the deceased, naming complainant as beneficiary. Complainant paid all of the premiums on this policy. In June, 1937, the insured, Mary L. Bolton herself, applied for and obtained the policy sued on in the present case, on which she paid all of the premiums. The complainant was also named the beneficiary in this policy. Neither, so far as appears, knew of the other's action. Both were industrial life policies requiring the payment of small weekly premiums which were collected by different agents of the Company.

The insured died August 3, 1937. The defendant paid to the beneficiary therein the proceeds of the first policy, but refused the payment of the one in suit, apparently on the ground that there had been no compliance with the above quoted clause.

Prior to the insured's death, the defendant had collected from her 7 weekly premiums. The Chancellor found that there had been no offer to return these. The evidence does not preponderate against this conclusion; and, moreover, there was no such offer coupled with the answer or appearing elsewhere in the record.

The contention of the defendant is that because there was no compliance with the above quoted provision, the policy in suit was void and the risk never attached.

The contention of the complainant is that the conduct of the defendant in collecting and retaining the premiums is so far inconsistent with the defense relied on that defendant is estopped to make it.

It is to be noted at the outset that there is no insistence that either the complainant or the insured has been guilty of any fraud or bad

528

faith, or that either made any misrepresentation of any kind whatsoever. As already stated, so far as appears, neither knew or had reason to know of the existence of the policy procured by the other.

■ By the policy provision relied on, it is made to appear that the defendant did not intend to be bound in the first instance by the mere issuance of a second policy; that it reserved the right to investigate after the policy had been issued for the purpose of ascertaining whether another policy had been previously issued, and if so, whether the second policy would be accepted and the required endorsements made on the first policy. In other words, it was left entirely in the discretion of the executive officers of the Company as to whether they would treat both policies as being in force. See Melick v. Metropolitan Life Ins. Co., 84 N. J. L., 437, 87 A., 75; and Atlas v. Metropolitan Life Ins. Co. (Sup.), 181 N. Y. S., 363.

■ In the absence of a contractual time limit, the officials were entitled to a reasonable time in which to make an appropriate investigation with a view of ascertaining the facts and exercising their discretion with respect thereto. Had it been decided not to accept the second policy and make the required endorsement on the first, the insured should have been notified of that fact, the collection of the premiums stopped, and, in the absence of fraud, those collected returned. Absent such action, the insured was warranted in believing from the fact that the defendant was regularly collecting the premiums that the policy was in force and that the defendant had elected to so treat it even if there were outstanding a previously issued policy on the same risk. Compare: Watkins v. United States Cas. Co., 141 Tenn., 583, 214 S. W., 78; Cooley v. East & West Ins. Co., 166 Tenn., 405, 61 S. W. (2d), 656; McConnell v. Southern States Ins. Co., 5 Cir., 31 F. (2d), 715.

This, we think, results from a fair and reasonable construction of the above quoted policy provision unless we adopt the defendant's view as to the exonerating effect to be given the last sentence thereof, —a question that we discuss shortly.

■ As has often been said, forfeitures are not favored in the law and courts are always prompt to seize hold of any circumstances that indicate a determination to waive a forfeiture or an agreement to do so on which the party has relied and acted.

■ The principle applicable here has been stated thus:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture." Westchester Fire Ins. Co. v. McAdoo, Tenn. Ch. App., 57 S. W., 409, 410;

Knickerbocker Life Ins. Co. v. Norton, 96 U. S., 234, 24 L. Ed., 689; Life & Cas. Ins. Co. v. King, 137 Tenn., 685, 195 S. W., 585; Phillips v. North River Ins. Co., 14 Tenn. App., 356, 363. See also Cooley v. East & West Ins. Co., supra; and Watkins v. United States Casualty Co., supra.

But defendant contends in effect that this salutary principle cannot be applied in the present case because its basis, i. e., knowledge, actual or constructive, on its part, of the existence of the other policy, is rendered unavailable to support or give rise to the doctrine by reason of the last sentence of the policy provision under consideration.

We are thus required to consider the effect to be given to what is referred to by Landon, J., in Kelly v. Met. Life Insurance Co., 15 App. Div., 220, 44 N. Y. S., 179, 181, as "the expression of this rule of self-stultification," reading, "The company shall not be presumed or held to know of the existence of any previous policy, and in such case the issue of this policy shall not be deemed a waiver of this condition." As pointed out in the case next below cited, the first clause is to be construed in the light of the second. So considered, we think the proper construction is, that the first clause relates to the state of the Company's knowledge or ignorance at the time a second was issued and does not refer to what it discovers or should discover within a reasonable time thereafter. See Atlas v. Metropolitan Life Ins. Co., supra.

So construed, it may be assumed for the purpose of disposing of the question under consideration that the provision is a valid one.

If, upon the other hand, it should be regarded as meaning, as the defendant seems to contend, that the insurer should not in any event be held to know of the existence of a previously issued policy, regardless of whether it actually acquire or should acquire knowledge of it, then it is so unreasonable, as applied to a situation such as that before us, that we would have no hesitancy in holding it void. Otherwise, an insurer so providing, could unjustly enrich itself by the simple expedient of collecting premiums on a second policy and failing or refusing to make the required endorsement on a previously issued policy of which it had knowledge. The holder of the second policy, however innocent, and devoid of the same knowledge, would thus be completely at the mercy of the insurer. Such a situation would be intolerable.

Whether, under the particular facts here shown, or rather absence of facts, the clause as above construed is still so unreasonable as to render it ineffective, as appears to be contended, it is, as indicated, not necessary to decide; because a holding, or the lack of a presumption with respect to what the defendant knew at the time the second policy was issued, furnishes no protection against knowledge which it acquired, or ought to have acquired, after that time.

In other words, the material inquiry here is not necessarily what the

defendant knew or did not know about the existence of the first policy at the time the second was issued, but what it knew or ought to have known during a reasonable period thereafter, in the course of which it was collecting the premiums which it now retains. It is out of this conduct, from which a new agreement not to invoke the quoted policy provision is implied, that the estoppel, if any, must arise. Independent Order of Foresters v. Cunningham, 127 Tenn., 521, 156 S. W., 192, 5 A. L. R., 1569.

The present case does not, as some apparently are held to do, present a situation in which there is a reasonable factual basis for excusing the insurer of ignorance of the existence of its own policies; and allowing it to contract to that end. See Helm v. Sun Life Ins. Co., 141 Md., 326, 118 A., 755, 27 A. L. R., 957, and note; Pisker v. Metropolitan Life Ins. Co., 115 N. J. L., 582, 181 A., 31, 101 A. L. R., 1133, and note. For instance, there is here no evidence whatever as to how the defendant kept its records of the policies issued by it.

So the issue to be determined is whether, during the period referred to, the defendant is chargeable with knowledge of the existence of the second policy.

The defendant examined one of its clerks, who testified that she had charge of "agents, life register, lapse register of the policies coming in"; that when the policy here involved was issued, she did not "discover the fact that she already had a policy on her"; and that this fact was not known to the defendant. At another place, in response to the rather suggestive question, "And you said the Company did not know there was two policies in existence at the same time?," she replied, "No, sir." This was all the evidence on the question and for reasons shortly to be stated, we regard it as of no probative value.

It has been held in this State that, if want of knowledge on the part of an insured of the existence of other insurance in violation of a policy provision is imputable to negligence on his part, he cannot plead it to avoid a forfeiture. Jackson Bldg. & Loan Ass'n v. Fire & Life Ins. Co., 173 Tenn., 160, 164, 116 S. W. (2d), 995; Arnold v. Ins. Co., 106 Tenn., 529, 61 S. W., 1032. The rule is no less applicable to an insurer. Monahan v. Mutual Life Ins. Co., 103 Md., 145, 63 A., 211, 5 L. R. A. (N. S.), 759; Supreme Lodge K. of P. v. Kalinski, 163 U. S., 289, 16 S. Ct., 1047, 41 L. Ed., 163; Life & Cas. Ins. Co., v. King, supra.

The applicable principle, an element of the doctrine of equitable estoppel, is, that where a party, although ignorant or msitaken as to the real facts, is in such a position as that he ought to have known them, knowledge will be imputed to him. 2 Pomeroy's Eq. Jur., Sec. 809.

In the present case, there is no satisfactory basis in the evidence for the conclusion that the officials of the defendant having the mat-

ter in charge, were not in a position to know of the existence of the first policy. As a matter of fact, there is nothing in the evidence to indicate that they did not actually know of it. If, because of the contractual provision, we are forbidden to presume about the status of the matter at the time the first policy was issued, nevertheless it is permissible to presume, and must be done, nothing else appearing, that the executive officials of the defendant could have ascertained the facts when the necessity therefor arose; and this was brought about by virtue of the duty resting on the defendant to seasonably discover the facts necessary to the exercise of its discretion with respect to the existence of both policies concurrently.

It is true that the employee above referred to testified that the "Company did not know there were two policies in existence at the same time, and neither did she," but, as already stated, her testimony in this rgeard is without probative value. She testified in general terms and the matter was not shown to be in the line of her duty; nor was she shown to be in a position to know what was known by the executive officers of the Company, whose duty it was, by the express terms of the policy provision relied upon, to make the endorsement on the first policy in the event it was decided to carry both. Compare Kidd v. National Council, 137 Tenn., 398, 193 S. W., 130; Young v. Harris-Courtner Co., 152 Tenn., 15, 268 S. W., 125, 54 A. L. R., 516; Id., 152 Tenn., 34, 268 S. W., 1120.

Neither of these officials, the president, vice-president, or secretary, testified, and the complainant is entitled to the benefit of an inference from their failure to do so that a disclosure would have shown the fact to be that they knew or should have known of the existence of the prior policy. Fisher v. Ins. Co., 124 Tenn., 450, 138 S. W., 316, Ann. Cas., 1912D, 1246, and cases cited. This, because, as stated, the policy provision in question makes it the duty of these officials in the event mentioned to make the specified endorsement on the prior policy, and apart from other reasons it is a fair inference from the fact of the existence of this duty, that they are the officials who did know, or whose duty it was to know, whether a prior policy had, in fact, been issued.

As before indicated, we do not think that, in the absence of any evidence with respect to her opportunity, or the opportunity of others, to know the truth, the testimony of the clerk to the effect above mentioned, warrants the conclusion that neither of the officials referred to had knowledge of the pertinent fact. Compare Young v. Harris-Courtner, supra.

As already pointed out, there is no factual basis for the view that the defendant did not keep its records in such manner as that its officials could, with even slight care, know or discover within a reasonable time whether there were outstanding two policies covering the same risk. Certainly, under the facts of the present case, the de-

fendant was in a far better position to know or learn of the truth than was the complainant.

The defendant relies chiefly upon the case of Kizer v. Life & Cas. Ins. Co., 169 Tenn., 605, 90 S. W. (2d), 513, 522, and contends that it should control our conclusion. We do not think so. Apart from the difference in the showing made with respect to how the records of the respective insurers were kept, the present case is to be distinguished from that one by reason of the difference in the two policy provisions involved—a difference too obvious to require detailed comparison of the language used.

In the Kizer case, after reviewing all of the authorities, Mr. Special Justice Smith indicated the determinative distinction in the following language:

"From a consideration of these cases, it is fair to draw the inference that those apparently supporting the contention of the plaintiff were decided because a forfeiture clause was contained in the policies, whereas in the cases holding a contrary view there was no forfeiture clause involved, but, on the contrary, there was a provision limiting the liability of the company to a certain maximum amount on any one life, as does the provision in the policy in the instant case."

The basis of the distinction seems to be that whereas the continued acceptance and retention of the premiums by an insurer under the circumstances stated would be fundamentally inconsistent with the position that the policy was void and hence give rise to an estoppel (Life & Cas. Ins. Co. v. King, supra), there is no such inconsistency between such conduct and reliance on a provision containing no forfeiture clause but creating an alternative obligation limiting the liability of the insurer to a certain maximum amount in the event there was a failure to comply with the conditions specified. See Helm v. Sun Life Ins. Co., 141 Md., 326, 118 A., 755, 27 A. L. R., 957, and note; Pisker v. Metropolitan Life Ins. Co., 115 N. J. L., 582, 181 A., 31, 101 A. L. R., 1133, and note.

Our conclusion is that under the evidence in the present case it must be considered that during the time mentioned the defendant either knew or ought to have known of the existence of the first policy, and that this being true, its continued acceptance and retention of the premiums of the policy in suit puts it in a position from which it cannot be permitted to invoke the provision of the policy relied upon. Monahan v. Mutual Life Ins. Co., supra; National Life & Acc. Co. v. House, 104 Ind. App., 403, 9 N. E. (2d), 133.

The defense relied upon must fail for the further reason that the defendant failed to carry the burden that was upon it to show that the first policy did not contain the endorsement required by the policy provision, authorizing the contract here involved "to be in

force at the same time." Compare Kidd v. National Council, supra; Wright v. Massachusetts Bonding Co., 8 Tenn. Civ. App., 108, and Freeze v. Continental Cas. Co., 5 Tenn. App., 261.

The result is, the decree is affirmed at the cost of the defendant.

Senter and Ketchum, JJ., concur.