# SARAH J. HELM

*vs.*

# THE SUN LIFE INSURANCE COMPANY.

*Life Insurance—Provision of Policy—Existing Insurance.*

A provision, in a policy issued by an "industrial insurance" company upon the life of a child, for a small sum and in consideration of a weekly premium of a few cents, that in case a policy had been previously issued by the company upon the same life, its liability upon the later policy should be restricted to the amount of premiums paid thereon, *held* to be valid and enforcible.

*Decided June 22nd, 1922.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by Sarah J. Helm against the Sun Life Insurance Company of America on a policy of insurance. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Joseph Bernstein* and *Joseph Grinsfelder,* with whom were *Siegel & Siegel* on the brief, for the appellant.

*Joseph C. France* and *Allan H. Fisher,* with whom were *Jerome Sloman and Fisher & Fisher* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment of the Baltimore City Court on a case stated for its opinion on the law, with an agreement that if the court should be of the opinion that, under the law applicable to the facts agreed to, the plaintiff was entitled to recover, it should give "judgment for the sum of $240.00 and costs of suit, otherwise for the defendant," reserving to each party the right of appeal.

It appears from the statement of facts that the appellee, the Sun Life Insurance Company of America (defendant), is a corporation of the State of Maryland, and for more than thirty years has conducted the business of industrial insurance, a large part of which "consists of policies issued on the lives of children," in which cases the beneficiary is usually the parent or other person upon whom the burden of sickness or "burial expense" would fall in the event of the death of the insured; that to prevent any insurance from being taken out "for the purpose of speculating on the insured's life, it is the policy of the defendant company to refuse, except after special investigation, to issue more than one policy on any one life"; that the premiums "run from five to ten cents, payable weekly; and the company issues no single policy carrying a larger weekly premium than ten cents."

On the 1st of October, 1917, the company, on the application of Josephine Bayles, purporting to be the aunt of the insured, and in consideration of the weekly premium of five cents, issued a policy for $120 on the life of Catherine V. Brown, "a child seven years of age," whose residence was given as 932 N. Gilmor Street, in which Sarah J. Canby, the child's mother, was named as the beneficiary. On the 11th of November, 1918, "the company issued what afterwards proved to be another policy on the life of the same child" for $240. In the application for this policy the name of the applicant and beneficiary was given as Sarah J. Helm," purporting to be and in fact the child's mother who had remarried after the issuing of the earlier policy." In this instance

the residence of the insured was given as 210 South Washington Street, and in the application (said applications having been taken by different agents), it was stated "over the signature of the mother that the company held no other policy on the life of the child," which statement, it is admitted for the purpose of this case, was made in good faith. The child died on the 31st of May, 1920, and the company paid the mother the amount due under the first policy, but refused, for the reasons hereinafter stated, to make any payment under the second policy, except to the extent of the premiums paid thereon, which were duly tendered. From the date of the second policy, an agent of the company collected the weekly premiums on the first policy and another agent collected the premiums on the second, and each accounted for the same to the proper officer of the company.

The statement of facts contains the further statements that the company conducts its business under the supervision of the Insurance Commissioner of Maryland, and received from said commissioner a letter "of approval," dated December 13, 1921, which is made a part of the statement of facts; that under its method of doing business, the company does not keep a list "or ledger accounts with holders of its policies," and has no means of determining from its books or otherwise, "except as hereinafter stated, whether it is twice insuring the same risk"; that the reasons for this method of conducting the business are, in the first place, that its policies are issued "at the average of 1,500 a week"; that the total number of policies in force "are approximately 250,000"; that all collections are made through collectors "who are of necessity grouped geographically according to districts"; that no bills for premiums are sent out, and the only receipts given to the person maintaining the insurance are entries made by the collector in the pass book retained by such person; that the cost of conducting the business in any other way, "as for example by keeping individual ledger and sending out bills for premiums," would add so much to the cost and expense

of the insurance "as to make it prohibitive as the average weekly premium does not exceed eight cents," and "the margin of profit to the company is small, and its patrons are those who cannot afford to pay large premiums," and, in the second place, "even if it were practical for the company to keep an alphabetical list of the names of the risks, the information thereby afforded would be of little value"; that in many cases "the names are spelled phonetically to the agents"; that in some cases they are given inaccurately and subsequently changed, and in the large volume of business done by the company there would, "among the commoner names, be frequent instances of duplication." The statement of facts then states that "to insure the non-duplication of its risks, except in cases where special examination discloses the propriety of a second policy on the same life, each and every policy issued by the company contains the following provision, legibly printed thereon:

"No Higher Premium Than 10 Cents Weekly Will Be Taken—Please Read Your Policy.

"If the terms and conditions of this policy are not satisfactory to the insured, this policy may be surrendered to the company at its home office only, within one week from the date hereof, whereupon it will be cancelled and the premiums paid hereon returned.

"Conditions.

"Third—The liability of the company shall be limited to the amount of the premiums paid hereon if any other policy on said life shall have been previously issued by this company, and shall be in force at the date hereof, unless this or the previous policy contains an endorsement signed by the president, vice-president or secretary that this policy may also be in force at the same time. The company shall not be presumed to know of the existence of any previous policy, and in such case the issuance of this policy shall not be deemed a waiver of this condition."

The concluding statement is:

"Neither policy hereinabove mentioned contained an endorsement by the president, vice-president or secretary; nor had they or any of them, nor any official having the power to waive the condition, any actual knowledge of the fact that the said second policy covered the same risk which was insured by the earlier one."

The letter of the Insurance Commissioner of Maryland referred to in and made a part of the statement of facts, is marked "State Insurance Commissioner—Conclusions," and states:

"The company is ably and efficiently managed, it is financially strong, and provides ample protection to policy holders. Its dealings with the policy holders, agency force and the public are just and equitable. The books and records are neatly and accurately kept, reflecting credit on those charged with that responsibility."

On the case as stated, the court below entered a judgment for the defendant, from which the plaintiff has brought this appeal.

The appellant relies upon the case of *Monahan* v. *Mutual Ins. Co.* 103 Md. 145, and the case of *Atlas* v. *Metropolitan Life Ins. Co.*, 181 N. Y. Supp. 363. In *Monahan's Case*, the Mutual Life Insurance Company of Baltimore issued to the appellant, on the 3rd of December, 1904, a policy on the life of her mother, Mary J. Marion, the fourth condition of which was as follows: "This policy shall be void if * * * there is in force upon the life of the insured, a policy previously issued by this company, unless the policy first issued contains an endorsement signed by the president or secretary, authorizing this policy to be in force at the same time." The appellant paid the weekly premiums until the death of her mother in September, 1905, and when she asked the company to pay her the amount of the policy, she was "informed for the first

time" of the fact that a prior policy had been issued by the
company on the life of her mother in 1899 in favor of the
appellant's sister, and that there had not been indorsed on
that policy a permission for the second policy to be issued.
After disposing of other questions raised by the prayers,
CHIEF JUDGE McSHERRY said: "This brings us to the propo-
sition upon which the case was decided adversely to the appel-
lant; and that proposition is, as already indicated, that the
failure to have indorsed on the first policy an authorization
permitting the second policy to be in force at the same time
in the same company, avoided the second policy. Like kin-
dred clauses imposing forfeitures for other collateral causes,
condition or restriction four, which is relied on to annul the
policy in suit, should be strictly construed against the insurer
and should be confined in its application within the narrowest
limits possible; especially as it exacts from the beneficiary, at
the risk of a drastic penalty, the disclosure of a fact which
the company itself knows, or is at least bound to know, whilst
the applicant, in perfect good faith and without culpability,
may be wholly in ignorance of it. * * * Treating, then, this
forfeiture clause—for that is what in effect it is—with the
severe strictness which under the adjudged cases its harshness
merits in such instances as this record exhibits, it is, *a priori,*
obvious that evidence of much less probative value will be
deemed sufficient to prove a waiver of this drastic provision
than would be considered adequate to establish a waiver of
some more reasonable or just restriction." After stating that
the appellant made forty-one payments of weekly premiums to
the company, and that the company received and retained
these payments without intimating that the policy was ques-
tioned or disputed, he said further: "It could rightfully
collect and receive these premiums from the appellant only in
the event that it considered her the holder of a valid policy.
If a condition of fact existed which vitiated that policy, or
which precluded it from having had validity in its inception,
by virtue of a term of the contract, and that condition of fact

was known by the insurer, *or ought to have been known by it,* and was *not* known by the beneficiary, then the continuous receipt of the premiums by the insurer must be taken to indicate that the insurer did not rely on that condition of fact, but elected to waive the cause of forfeiture or invalidity, because upon no other hypothesis could it justify the collection of the premiums. It is undoubtedly true that a party cannot be said to have waived an objection of which he was not aware; and it has been insisted that the insurance company could not be held to have waived the provisions of clause or condition four, because it did not know when it issued the policy sued on that it had previously written another policy on the same life. Evidence was adduced to show that the method pursued in keping its records and its books prevented the company from actually knowing that there was a prior outstanding policy on the same life. But that is no answer to the asserted waiver. When courts come to deal with questions in cases like the one at bar, a rigid application of the general rule requiring that there shall be actual knowledge of the forfeiture or of the existence of the cause producing a forfeiture, before there can be a waiver, will not be insisted on." He quotes the statement of Mr. Justice Brown in *Knights of Pythias* v. *Kalinski,* 163 U. S. 289: "Granting that the continued receipt of premiums or assessments after forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company * * *, this is true only of such facts as are peculiarly within the knowelge of the assured. If the company ought to have known of the facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse," and then says: "It will not do to say that in order to avoid expense the company's books were kept in such a manner as not to disclose the names of the assured, and, therefore, that it could not know when the second policy was issued that there was a prior one of its own outstanding on the same life. * * * It *ought* to have

known that it had issued the first policy, and it will not be heard to say that it *did not* know that fact, merely because it kept its records in such an imperfect way that they did not contain the names of the insured. * * * Waiver by the acceptance of a premium is not based upon contract, but on estoppel of the company to insist on conditions of the policy inconsistent with the acceptance or retention of the premium. * * * The tender by the company to the appellant after the death of the insured, of the amount of the forty-one premiums paid in, cannot relieve the appellee from its liability under the policy sued on."

In the case of *Atlas* v. *Metropolitan Life Insurance Co.,* *supra,* the policy contained the provision: "This policy is void * * * if any policy on the life of the insured has been issued by this company and is in force at the date hereof, unless this policy contains an endorsement, signed by the secretary, that such prior policy may be in force. The company shall not be presumed or held to know of the existence of any previous policy, *and in such case the issue of this policy* shall not be deemed a waiver of this condition. If this policy is or shall become void, all premiums paid shall be forfeited to the company." Referring to the clause that the company "shall not be presumed or held to know of the existence of any previous policy," the court said: "Manifestly the purpose of this clause must have been to permit the company to examine its record *after* the issue of the policy, in order to determine whether a previous policy had been written, and not to be bound by the mere issuance. The uncontradicted, and indeed admitted, receipt of premiums continuously after the issuing of the policy is, however, on familiar principles, if unexplained, conclusive evidence of a waiver of the condition."

Without departing in any degree from the decision in *Monahan's Case,* or questioning the clear and forcible reasoning of the Court, it is, we think, clearly distinguishable from the case at bar. There the Court was dealing with a *for-*

*feiture clause,* which, the Court said, exacted from the bene-
ficiary of the policy, "at the risk of a drastic penalty," the
disclosure of a fact which the company itself knew, or was
"bound to know," and that the doctrine of estoppel applied
because the acceptance and retention of the premiums by the
company were *inconsistent* with the defense denying the
validity of the policy in its inception. Here the condition in
the policy does not declare that the policy shall be *void* in
case a previous policy issued by the company on the life of the
insured is in force at the date of the second policy, but simply
provides that in case there is such a policy the liability of the
company on the second policy shall be limited to the amount
of premiums paid thereon, unless there is an indorsement on
one of the policies, signed by the president, vice-president
or secretary of the company, that the second policy "may
also be in force at the same time." If the condition men-
tioned, instead of limiting the liability of the company to the
amount of premiums paid, had provided that in case there
was such other insurance the company should only be liable
for one-half of the face of the policy, it could not be said
that it was too unreasonable to receive the sanction of the
courts, and if the liability of the company can, by the terms of
its policy, be altered at all under such circumstances, there
is no reason why, in the absence of fraud or misrepresenta-
tion, it cannot be limited to the amount of the premiums paid.
According to the agreed statement of facts, the company does
not "keep a list of or ledger accounts with holders of its policies
and has no means of determining from its books or otherwise,
* * * whether it is twice insuring the same risk"; that the
cost of conducting its business in any other way would so add
to the cost and expense of the insurance "as to make it pro-
hibitive," and that the condition referred to is inserted in
every policy for the purpose of insuring "the non-duplication
of its risks," and preventing "any insurance from being taken
out for the purpose of speculating on the insured life," yet
if the settled rule, stated and applied in *Monahan's Case* to

the *forfeiture clause* there under consideration, should be held to be applicable to the condition referred to in the present case, it would render that condition entirely nugatory.

Statements in applications for life insurance as to other life insurance have been held to be "material as a matter of law" (14 *R. C. L.* 1081, sec. 259; *Phoenix Life Ins. Co.* v. *Raddin,* 120 U. S. 183; *March* v. *Metropolitan Life Ins. Co.,* 186 Pa. St. 629), and provisions in fire insurance policies avoiding or limiting liability in case of other insurance have been sustained (*Sweeting* v. *Mutual Fire Ins. Co.,* 83 Md. 63), and we see no reason why a condition in a life insurance policy like the one in the present case should not be enforced. If the condition in question had provided, as did the policy in *Monahan's Case,* that the policy should be void in case there was a previous policy outstanding, the continued acceptance and retention of the premiums would have estopped the company from relying on a forfeiture, but here the parties deliberately and expressly contracted for a *limited liability* on the part of the company in case of the existence of a certain fact, of which neither had any knowledge and the defendant had no means of knowing. As the existence of that fact did not under the condition mentioned render the policy *void,* but it continued in force to the extent of the liability agreed upon, the receipt and retention of the premiums did not operate to estop the defendant from relying on the condition, and we will, therefore, affirm the judgment of the court below.

*Judgment affirmed, with costs.*