GEORGE PISKER, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF ALBERT BAURLE, PLAINTIFF-RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.

Submitted May 31, 1935—Decided October 9, 1935.

For the plaintiff-respondent, *D. Trueman Stackhouse* and *Ervin E. Field.*

For the defendant-appellant, *Starr, Summerill & Lloyd* (*Alfred E. Driscoll,* of counsel).

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court on the verdict of a jury in the Gloucester Circuit in favor of the plaintiff and against the defendant.

The defendant had issued four industrial policies on the life of the decedent, Albert Baurle, two of them dated Jan-

uary 2d, 1933, the third dated May 15th, 1933, and the fourth dated August 28th 1933. There was also a fifth policy issued November 6th, 1933.

The insured died December 9th, 1933, and defendant paid the first two policies but refused to pay the other three, whereupon plaintiff brought suit thereon and recovered on the third and fourth policies. A directed verdict was entered for defendant on the fifth.

At the trial two issues were raised by the pleadings. The first was whether the insured had been guilty of material and fraudulent misrepresentations in the applications for these policies, as the result of which the policies were void. The second issue was whether there could be a recovery under the terms and conditions of the policies for the full amount of the insurance, where the policies were issued subject to conditions contained therein limiting the liability of the company, in case of any claim, to the return of the premiums paid if the facts as they existed at the time the policies were issued failed to comply with the conditions specified therein.

The issue of alleged fraud in the applications was abandoned by the defendant, so that we are concerned only with the question as to whether there were breaches of conditions in the policies which would limit the liability of the defendant to the return of the premiums.

Each policy contained a statement that it constituted the entire agreement between the company and the insured and the holder and owner thereof; that its terms could not be changed, or its conditions varied, except by the express agreement of the company evidenced by the signature of its president or secretary, and that agents are not authorized and have no power to make, alter, or discharge contracts, or to waive forfeitures, &c.

Each of the policies provided that it was subject to the conditions named therein each of which was made a part of the contract.

The pertinent conditions were:

"If (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the Insured * * * has, within two years before the date

hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any * * * disease of the * * * kidneys unless such * * * medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary; or if (3) any policy on the life of the Insured hereunder has been previously issued by this company and is in force at the date hereof, unless the number of such prior policy has been endorsed by the Company in the 'Space for Endorsements' on page 4 hereof (it being expressly agreed that the Company shall not, in the absence of such endorsement, be assumed or held to know or to have known of the existence of such prior Policy, and that the issuance of this Policy shall not be deemed a waiver of such last mentioned condition), then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of the premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company."

The grounds of appeal upon which defendant insurance company relies for a reversal of the judgment below go to the refusal of the trial court to grant the defendant's motion for a directed verdict in its favor and to alleged errors in charging and refusing to charge the jury.

At the trial it was admitted that the defendant relied on the applications signed by the insured when the policies were issued. The applications were not attached to nor made a part of the contracts of insurance. While the agents who solicited the two policies testified that they had asked the insured the questions contained in the applications and filled out the applications in insured's presence and that he had thereupon signed the same, there was evidence produced by the plaintiff to the effect that the applications had been signed by the insured in blank and so delivered to the agents of the defendant.

It clearly appeared from the applications, which were admitted in evidence, that the insured did not specify therein the names of the doctors, dates of attendance and illness as

required by the questions contained in said applications, and that the answer to the question in the application for the third policy as to whether insured had other insurance in force in defendant's company was "no," and that the application for the fourth policy failed to disclose that the third policy had been issued and was in force.

The uncontradicted testimony was that from March 29th, 1933, to May 10th, 1933, the insured, on eight different occasions, had been treated by a physician for simple cystitis. The attending physician, however, testified that he did not consider that the insured was suffering with any serious disease or complaint and that he did not recall having told the insured what was "wrong with him." The defendant, on the other hand, insists that cystitis is a serious disease and that the frequent attendance by the physician proved it to be such.

Had the issue in the case been limited to alleged fraudulent representations made in the applications, or to the violations of the conditions contained in the policies pertaining solely to the soundness of insured's health or attendance upon him by a physician within two years before the dates of the policies for any serious disease or complaint, we would be inclined to approve the submission of these questions by the trial court to the jury, with proper instructions as to the law pertaining thereto.

We do not think it worth while, however, to go into these matters, for the reason that our examination of the policies and the evidence presented leads us to the conclusion that the case must be decided, not upon answers or lack of answers to questions contained in the applications, nor disputed questions of fact as to the violations of the conditions of the policies pertaining to the status of the insured's health when the policies were issued, but upon the existence of an undisputed fact in the case, which, under the terms of the policies, constituted a direct violation of one of the conditions thereof, and made it imperative for the trial court for that reason to direct a verdict for the defendant.

The condition to which we refer is No. 3 of the policy, cited *supra*, and has to do with the existence of prior policies

of insurance on the life of the insured in the defendant company.

It is admitted that at the time each of the two policies in question was issued and delivered, there were in force in defendant's company one or more prior policies of insurance on the life of the insured, the numbers of which were not endorsed upon the two policies as required by the conditions thereof.

In fact, Policy P 1, dated May 15th, 1933, the first of the two policies involved in this suit, contained no endorsement, by number or otherwise, showing any other policies covering the life of the decedent in force in defendant company. At the time, however, Policy P 1 was issued there were two other policies in force issued January 2d, 1933, nearly five months previous to Policy P 1. The second of said policies sued on, issued August 28th, 1933, had endorsed thereon a statement showing that the two previous January policies were in force but it failed to disclose that Policy P 1 had been issued and was in force. In spite of this, however, the trial court submitted to the jury for its determination the question of material, fraudulent misrepresentations in the applications for the policies and the question whether the insured or the defendant's agents were responsible therefor.

The trial court thus confused the law applicable to negotiations and applications for a policy of insurance with the law applicable to a condition in the policy itself. There is a difference between obtaining a contract through a misrepresentation as to a fact, and making the existence of that fact a condition upon which the contract, by its written terms, is dependent. *McAuliffe* v. *Metropolitan Life Insurance Co.,* 93 *N. J. L.* 189; *Chorney* v. *Metropolitan Life Insurance Co.* (*Rhode Island Supreme Court*), 172 *Atl. Rep.* 391.

The insured was bound by the conditions of the policy and upon receiving his policies he was under a duty to read them, and make objections if they did not properly contain the stipulations agreed upon. *Crescent Ring Co.* v. *Travelers' Indemnity Co.,* 102 *N. J. L.* 92.

Plaintiff argues that whatever merit there may be in this principle of law is overcome by the fact that there was no

proof in the case that the insured ever had the policies in his possession or ever saw them or had an opportunity to inspect them after they were issued. Our examination of the evidence, which we do not deem it necessary to set forth, leads us to the conclusion that the proofs and legitimate inferences to be deduced therefrom, clearly indicated that the policies were duly received by the insured.

The policies were short and easily read and contained in black type, the words—"Notice to Policy Holders—Please read your policy promptly upon receipt."

The only contract which the insured had with the defendant was the one embodied in the policy and his failure to read it or otherwise learn of its provisions furnishes no legal grounds for nullifying its conditions. *Lauze* v. *Insurance Co., 74 N. H.* 334; 68 *Atl. Rep.* 31; *Karp* v. *Metropolitan Life Insurance Co.* (*N. H.*), 164 *Atl. Rep.* 219.

It is not questioned that the defendant had authority to limit its contract as it did under the "conditions" thereof pertaining to the endorsement on the policy of previously issued policies on the life of the insured in defendant's company. *Dimick* v. *Metropolitan Life Insurance Co., 69 N. J. L.* 384. In fact the evidence indicates that such requirement was necessary if the industrial portion of the defendant's business was to be carried on.

It appeared that the defendant as of December 31st, 1933. had outstanding thirty-three million nine hundred seventy-four thousand two hundred and sixty-one industrial policies; that the average number of industrial policies issued weekly by the defendant was approximately fifty-five thousand; that the defendant did not keep a list or ledger account showing by name the holders of its industrial policies. The records were kept by districts and the policies referred to by numbers; that to have conducted the industrial business so as to have disclosed the names of policy holders would have required one hundred and fifty million ledger cards and greatly increased the cost of this type of insurance and made it prohibitive, and would be of questionable value in view of the fact that the spelling of names on the applications and policies is frequently phonetic.

The condition being lawful and reasonable it follows that defendant was entitled to have it enforced. Failure of insured to comply with the condition made operative the alternative obligation of the defendant.

While the continued acceptance by an insurance company of the premiums might constitute a waiver of a condition where such action would be inconsistent with the defense that the insurance company had absolutely no obligation remaining under the policy, as in *Melick* v. *Metropolitan Life Insurance Co. (Supreme Court)*, 84 *N. J. L.* 437, where a forfeiture of the premiums was involved, such principle is not applicable in the instant case. Here the failure to comply with the condition did not cause a forfeiture but created an alternative obligation, that is, to return the premiums paid on the policies. The continued acceptance and receipt of the premiums by defendant, being entirely consistent with the existence of such alternative obligation, did not act as a waiver nor operate to estop the defendant from relying on the conditions. *Helm* v. *Sun Life Insurance Company of America (Court of Appeals of Maryland)*, 118 *Atl. Rep.* 755.

We therefore conclude that the conditions precedent to liability of the defendant for the full amount of the policies were not fulfilled, and that under the terms and conditions of the policies and the undisputed facts, the defendant was entitled to limit its liability to the return of the premiums, and that having tendered the premiums and the tender being refused, a verdict should have been directed for the defendant. *McAuliffe* v. *Metropolitan Life Insurance Co., supra; Prahm* v. *Prudential Insurance Co.*, 99 *N. J. L.* 288; *Orsini* v. *Metropolitan Life Insurance Co.*, 9 *N. J. Mis. R.* 407; 154 *Atl. Rep.* 201; *Barrase* v. *Metropolitan Life Insurance Co.*, 12 *N. J. Mis. R.* 631; 174 *Atl. Rep.* 165.

The judgment below will be reversed.

*For affirmance*—HEHER, PERSKIE, VAN BUSKIRK, RAFFERTY, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, WOLFSKEIL, JJ. 12.