Kizer *v.* Life & Casualty Ins. Co.

(*Nashville,* December Term, 1935.)

Opinion filed February 15, 1936.

606

L. M. Davis and Trabue, Hume & Armistead, all of Nashville, for plaintiff in error.

Sydney F. Keeble, of Nashville, for defendant in error.

Mr. Special Justice Smith delivered the opinion of the Court.

Mary B. Kizer, individually and in her capacity as administratrix of the estate of her deceased son, Thomas Kizer, instituted this action at law in the second circuit court of Davidson county against Life & Casualty Insurance Company to recover $1,500—$1,000, the face value of an industrial travel and pedestrian policy, issued by the company to her son, Thomas Kizer, on or about February 26, 1934, with $250 as a penalty on the ground that the company's refusal to pay said policy was not in good faith, and $250 as reasonable attorneys' fees made necessary to enable her to prosecute the suit.

The declaration alleged that on or about February 26, 1934, the company issued its policy of industrial travel and pedestrian insurance in the amount of $1,000 to Thomas Kizer, in which Mary B. Kizer, his mother, was named as beneficiary; that on or about February 10, 1935, while the policy was in full force and effect, the insured, Thomas Kizer, to whom the policy had been issued, received an accidental injury, which resulted in his death; and which entitled the beneficiary to recover from the company the sum of $1,000; that proper notice and proofs of loss were furnished to the company, and demand made upon the company for payment according to the terms and provisions of the policy, but the company refused to pay, and that its refusal so to pay was

not in good faith, and on account thereof, the plaintiff was entitled to recover the additional sum of 25 per cent of the face value of the policy, viz., $250, and that she had been forced to employ counsel, and incur other expense in bringing this suit, and enforcing payment.

The insurance company filed three pleas to the declaration: (1) That it did not owe plaintiff as she alleged in her declaration; (2) that it did not promise the plaintiff as she, in her declaration, alleged; and (3) a special plea that the policy sued on contained the following provision: "If a like Travel and Pedestrian policy or policies previously issued by the Company to the insured be in force concurrently herewith, making the aggregate indemnity in excess of $1,000.00, the excess insurance shall be void, and all premiums paid for such excess shall be returned to the insured."

The special plea averred that the facts were that at the time the policy sued on was issued, there was a like industrial travel and pedestrian policy issued by the company to the same assured, Thomas Kizer, making both of the policies concurrently in force, the aggregate under both being an excess of $1,000; that the first policy was paid in full to the beneficiary, Mary B. Kizer, and that all premiums on the second policy were offered to her as beneficiary, and administratrix of the estate of her deceased son, Thomas Kizer, but that she refused to accept said premiums which the company paid into court.

The case was tried on the pleadings, and a stipulation of facts. The stipulation substantially is to the effect that on February 26, 1934, the company issued to Thomas Kizer its policy of accident insurance, at a weekly premium of five cents, stating the number of the policy, that said policy was for the amount of $1,000, and about the

time it was issued to Thomas Kizer he was twenty-three years of age; had been in the employ of the Atlantic Ice & Coal Company in Nashville for about five years; that he was not married; and was living with his mother, Mrs. Mary B. Kizer, the beneficiary named in said policy, and that he was the main support of his mother.

On February 10, 1935, while said policy was in full force and effect, Thomas Kizer sustained an accidental injury which resulted in his death; the premiums on the policy were paid up, and the accident which resulted in his death was of a character covered by the policy; that Mrs. Mary B. Kizer gave proper notice to the insurance company of the accident, later furnished proper proofs of death, and otherwise complied with the requirements of the company with reference to making claims.

The company denied liability and refused to pay the claim.

It was further stipulated that in April, 1929, when Thomas Kizer was seventeen years of age, and living with his mother, an agent of the insurance company solicited Mrs. Mary B. Kizer for the issuance of another policy identical in its terms and provisions, the weekly premium being five cents, with the policy which is the subject of this suit in which Thomas Kizer was named as insured, and his mother, Mrs. Mary B. Kizer, was named as beneficiary.

The policy so issued to Mary B. Kizer on the life of her son, Thomas Kizer, as the insured, in April, 1929, was in force and effect from the date of its issuance until and including the time that Thomas Kizer was killed on or about February 10, 1935.

The insurance company, on proper proofs being filed,

paid the face value of the policy issued in April, 1929, to Mary B. Kizer, as the beneficiary therein named.

It was further stipulated that Mary B. Kizer was not aware of the fact that her son, Thomas Kizer, in February, 1934, had taken out the policy now in litigation, and had never seen the same, and was not aware of its existence until after his death.

The stipulation also stated that Thomas Kizer was not aware of the fact that his mother had taken out the policy of accident insurance on him, as the insured, in April, 1929, at the time he took out his policy in February, 1934, and at no time did either he or his mother know of the existence of the other policy; that Thomas Kizer's policy, and premium receipt book, were kept at the place where he was employed, that is, at the office of the Atlantic Ice & Coal Company at Nashville, and that Mrs. Mary B. Kizer's premium receipt book was kept with her policy at home.

It was further stipulated and agreed that neither the agent who wrote the policy dated in February, 1934, nor the insurance company had any knowledge of the first policy taken out in April, 1929, unless the court should hold that the fact of the issuance of the second policy, while the first one was in existence, and collecting the premiums regularly and keeping both policies in force for one year, constituted notice.

At no time did the same agent collect the premiums on both policies, but the premiums were collected by different agents of the insurance company at different places in the city of Nashville, and that the agent or agents who collected the premiums on each policy did not know of the existence of the other policy.

It was further stipulated that in the application on

which the policy was issued to Thomas Kizer in February, 1934, he was asked the question if at the time he had a like policy, or one with the same provision in it with the defendant company, and to this question, he answered that he did not.

Both of said policies were industrial policies, were carried on the books of the insurance company by numbers, and not in the individual names of the policyholders, as the company at all times had outstanding many thousand of these identical industrial policies; that the policy issued in April, 1929, was identical in every particular, except as to date with the policy issued in February, 1934, and that both policies contained the provision which has heretofore been quoted under the insurance company's third special plea, and that all premiums paid on the policy sued on were offered to the plaintiff before suit was brought, but she refused to accept the same, and they were tendered into court with the filing of the insurance company's pleas.

A jury being waived by both parties, the case was submitted to the trial judge, and from his action in awarding judgment in favor of the defendant, the plaintiff in the court below, plaintiff in error here, prayed and perfected an appeal in the nature of a writ of error to this court, and here has assigned three errors.

In support of the contention made by counsel for the plaintiff in error that the second policy was valid because the defendant company should have kept its records in such a manner, that despite its lack of actual knowledge of the issuance of the first policy, as to be able to learn of the existence of the second policy within a reasonable time after the date of its issuance, and that having failed within such reasonable time to ac-

quire knowledge of the existence of the first policy, it had waived or was estopped to rely on the provision contained in both policies to the effect that if a like policy had been previously issued by the company to the insured, and was in force concurrently with the second policy, making the aggregate indemnity in excess of $1,000, the excess insurance should be void, and all premiums paid for excess should be returned to the insured.

In the brief of counsel for the plaintiff, *Gough* v. *Insurance Co. of North America*, 157 Tenn., 546, 11 S. W. (2d), 887, and *Harris* v. *Louisiana Industrial Life Ins. Co.*, 19 La. App., 589, 141 So., 103, are the cases mainly relied on to support this contention to which, however, may be added *Clay* v. *Liberty Industrial Ins. Co.* (La. App.), 157 So. 838; *Cobbs* v. *Unity Industrial Life Ins. Co.* (La. App.), 158 So., 263; *Wills* v. *Liberty Life Ins. Co.* (La. App.), 159 So., 141, and *Monahan* v. *Mutual Life Ins. Co.*, 103 Md., 145, 63 A., 211, 5 L. R. A. (N. S.), 759.

The four Louisiana cases above cited were decided by an intermediate appellate court, the Court of Civil Appeal, and it does not appear that any of them were taken to the Supreme Court of Louisiana, or that the latter court has ever passed on the question presented in the case at bar.

In *Gough* v. *Insurance Co. of North America* (1928), 157 Tenn., 546, 11 S. W. (2d), 887, it appeared that the agent of the owner of a house had taken out two policies of fire insurance, aggregating more than the value of the property destroyed by fire, and that the second policy was taken out upon the agent's belief that the first policy had expired. As there had been a concurrent finding of fact by the two lower courts that the agent had exceeded the scope of his authority in procuring the second policy,

and that the fact of its procurement was not known to the owner until the fire occurred, it was held that the owner did not procure concurrent insurance, and was entitled to a decree for the face value of the policy with interest,

The court further held that the owner had never ratified the act of the agent in procuring the second policy, and, moreover, that the owner had no such notice of the issuance of the second policy as to charge her with negligence in failing to investigate, and find out whether the property was doubly or overinsured.

It was accordingly held that the owner was entitled to recover under both policies.

As this case involved a policy of fire insurance, and as in the standard form of fire insurance policies, there is an "excess value" clause, the effect of which is not merely to avoid subsequent policies, but all prior policies as well, thereby leaving the property without any insurance, it has been generally held on the principle that courts will seek by every possible legitimate means to avoid forfeitures, under such facts as existed in *Gough* v. *Insurance Co. of North America, supra,* both policies would be held valid.

Manifestly, the case just cited and discussed had no legitimate bearing on the decision of the case at bar in that, in the instant case, the provision of the policy herein quoted does not provide for a forfeiture, but clearly is a contract limiting the liability of the insurance company to the sum of $1,000 on the life of the insured, and only in the event other policies taken out on the same life exceed such amount is the excess insurance void, with an obligation on the part of the company to return the premiums accruing on such excess insurance.

In *Harris* v. *Industrial Life Ins. Co.* (1932), 19 La. App., 589, 141 So., 103, 104, it appeared that a negro man bore two names—one, Lum Hodge, and the other, Henderson Giles. After his death, the defendant insurance company discovered that it had issued two policies on his life, one in each name.

In the second policy his name was set forth as Lum Hodge, and Pearl Harris, his daughter, was named beneficiary. The second policy contained a stipulation which, among other things, provided that ''this policy is void . . . if any policy on the life of the Insured has been issued by this Company and is in force at the date hereof, unless this policy contains an endorsement signed by the Secretary that such prior policy may be in force.''

After the death of the insured, it was discovered for the first time that two policies had been issued on the same life, and the company paid the amount called for by the first policy to Viola Williams, another daughter of the deceased, beneficiary named in the first policy, but refused payment under the second, maintaining that it was void because of the provision above quoted.

Thereupon, Pearl Harris, the beneficiary named in the second policy, brought suit to recover thereon, and, from an adverse judgment, appealed to the Court of Appeal, which court reversed the judgment, and held that the company was liable on the second policy. In so holding, the court said:

''Since both policies were issued on the same life, and since there was no indorsement on the second, unless there is sound reason for disregarding the policy stipulation above quoted, the second policy never became effective, but we have reached the conclusion that the first policy was issued without the knowledge or consent of

the said deceased, and that it was not contemplated in the said stipulation that a policy issued at the request of the deceased on his own life should be rendered null and void because some other person, without the knowledge or consent of the insured, had, at some previous time, secured insurance on the life of the same insured and payable to some other person.

"It is shown to be the custom to issue policies of this kind at the request of any beneficiary sufficiently well related to the insured. If such person may secure and retain a policy without the permission or knowledge of the insured, and may thus render null and void a policy which the insured himself may later secure on his own life in favor of another beneficiary, then a manifest injustice has been done to the insured and to the beneficiary selected by him."

No authorities were cited in the opinion.

*Clay* v. *Liberty Industrial Life Insurance Co.* (La. App., 1934), 157 So., 838, 839, was a suit on a policy of industrial life insurance, and the policy sued on contained the following provision: "This policy is void . . . if any policy on the life of the insured has been issued by this Company and is in force at the date hereof, unless this policy contains an endorsement signed by the President, Vice-President or Secretary that such prior policy may be in force."

There was no indorsement on the policy sued on, and in holding that by the issuance of the subsequent policy on the same life, and collecting premiums thereon, the company had waived the provision above quoted, and was estopped by its conduct to declare a forfeiture of the second policy, the court said:

"The premium receipt book showed that premiums

had been paid upon two policies for different amounts in the name of Sam Clay and had been collected by two different agents of the company, but it did not establish that both policies were held by the same individual, nor was the secretary of the defendant company, John D. Brown, able to say how many Sam Clays had taken out policies. But even conceding, for the sake of argument, that the record does prove the issuance of another policy to Sam Clay, we are of opinion that the clause of the policy relied on has been waived. The defendant is presumed to be cognizant of its own records. It collected premiums for fifty weeks without attempting to cancel the policy upon the ground of the prior issue of another policy, and cannot now be allowed to deny validity of the policy upon that ground. It might be that the mere issuance of the policy would not work an estoppel by waiver, but, after a reasonable time has elapsed during which the company might ascertain the fact of its issuance, and certainly after the payment of fifty weekly premiums, it must be presumed to have waived the provision in that regard.'' *Atlas* v. *Metropolitan Life Ins. Co.* (Sup.), 181 N. Y. S., 363; *Kelly* v. *Metropolitan Life Insurance Co.*, 15 App. Div., 220, 44 N. Y. S., 179, and *Monahan* v. *Mutual Life Insurance Company*, 103 Md., 145, 63 A., 211, 5 L. R. A. (N. S.), 759, were cited as supporting authorities.

In *Cobbs* v. *Unity Industrial Life Insurance Co.* (La. App., 1935), 158 So., 263, it appeared that Clara Cobbs was the mother, and beneficiary, of an industrial life insurance policy issued to her son, Frank Cobbs. The policy was issued on August 8, 1932, and a previous policy, in the name of Frank "Cobs" was issued on or about

April 21, 1930. Both policies contained the following provision:

"If there be any previous policy in force, issued by this company on the same life, unless the existence of such previous policy be noted by an endorsement herein, signed by the President or the Secretary of the Company; and the Company shall not be presumed or held to know of the existence of any previous policy, and in no case shall the issue of the policy, or the payment of any premium thereof, be deemed a waiver of such endorsement. In the event of the existence of any previous policy, without endorsement hereof as above provided, the liability, if any, of the company under this policy shall not exceed the amount of the premiums paid thereon."

In upholding the judgment rendered in favor of the plaintiff, Mrs. Cobbs, the court said:

"Assuming that both policies were issued to the same individual, which seems likely, they were both in force for fifteen weeks, or from August 8, 1932, until November 24, 1932, when Cobbs died, and during that time there had been no attempt on the defendant's part to enforce the provisions of the policy.

"In the case of *Chas. Clay* v. *Liberty Industrial Life Insurance Co.*, 157 So., 838, decided December 10, 1934, we considered a similar provision of a policy, and held that, after the lapse of a reasonable time during which the insurer might ascertain from its records the fact of the issuance of the second policy, the failure to cancel the policy and the continued collection of the premiums would work an estoppel by waiver. In that case the two policies had been in force for fifty weeks without ob-

jection or action of any kind looking to the enforcement of the clause in the policy.

"It is said that this case differs from the *Clay Case* because here two different agents collected the premiums for the company. But, no matter how many agents collected the premiums, there was ample opportunity to ascertain the fact that the two policies were in existence."

In *Wills* v. *Liberty Industrial Life Insurance Co.* (1935), 159 So., 141, 142, two policies of industrial insurance have been issued by the defendant company on the life of Leander Wills, the son of the plaintiff, in each of which she was named as beneficiary, the first on September 29, 1924, and the second on April 27, 1931. The insured was killed September 23, 1933, and on proper proof of death being filed with the company, it paid the first policy at its face value, but refused to pay the second, basing its defense in declining to pay the second upon the following provision of the policy: "This policy is void if any policy on the life of the insured has been issued by this company, and is in force at the date hereof, unless this policy contains an endorsement signed by the President, Vice President or Secretary that such prior policy may be in force."

There was no such indorsement on the second policy.

A copy of the application, indorsed on the back, contained a statement by the applicant that he had no other insurance with the company.

The policy contained the further provision: "The company shall not be presumed or held to know of the existence of any previous policy, and in such case the issuance of this policy shall not be deemed a waiver of this condition."

It was shown in the proof that George Taylor, a lo-

cal agent, collected the premiums on both policies up to the time of the death of the insured, but the court held that notice to such an agent is not notice to the company, on the ground that only notice to, or knowledge of, agents with power to contract is imputed to the principal, and that notice to solicitors, or other intermediaries, was not notice to the company.

Despite the holding that notice to the local agent of the issuance of both policies obtained by his collecting the premiums on each of them was not notice to the company, the court affirmed a judgment in favor of the beneficiary named in the second policy, and in so holding said: "We find these views in perfect accord with those of our learned brothers of the Orleans circuit who, in the case of *Clay* v. *Liberty Industrial Life Insurance Company* (La. App.), 157 So., 838, 839, hold: 'The defendant is presumed to be cognizant of its own records. It collected premiums for fifty weeks without attempting to cancel the policy upon the ground of the prior issue of another policy, and cannot now be allowed to deny validity of the policy upon that ground. It might be that the mere issuance of the policy would not work an estoppel by waiver, but, after a reasonable time has elapsed during which the company might ascertain the fact of its issuance, and certainly after the payment of fifty weekly premiums, it must be presumed to have waived the provision in that regard.' "

In *Monahan* v. *Mutual Life Insurance Co.* (1906), 103 Md., 145, 63 A., 211, 5 L. R. A. (N. S.), 759, the facts were that some time in 1899 a policy of industrial insurance had been issued on the life of the appellant's mother in which a sister of the appellant was named beneficiary, and that on December 3, 1904, the company

wrote a like policy on the life of the mother of the appellant in which the appellant was named as beneficiary. It was conceded that the appellant paid the weekly premiums until the death of her mother in September, 1905, when, on filing due proofs of death, she, for the first time, was informed by the company that a prior policy of a like character had been issued in 1899, and from the date of its issuance had run concurrently with the policy issued on December 3, 1904, and the company declined to pay the second policy on the ground that it did not contain an indorsement in conformity with a certain provision embodied in the policy, and reading as follows: "This policy shall be void if . . . there is in force upon the life of the insured a policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time."

The second policy also contained the following provision: "(15) Is life proposed now insured in this company? If so state numbers and amounts of policies," and the answer given by the appellant was, "No."

The second policy was not indorsed as provided by the above-quoted provision. The insurance company had no actual knowledge that two policies were in existence until the death of the mother on whose life both policies had been issued, and the beneficiaries in each policy had no knowledge of the existence of the other until the death of their mother.

It also appeared that the insurance company kept its records of industrial insurance policies by numbers, and not by the names of the insured or beneficiaries.

In reversing the judgment of the lower court in favor of the insurance company, and entering one in favor

of the beneficiary named in the second policy issued on December 3, 1904, the court said:

"It will not do to say that in order to avoid expense the company's books were kept in such a manner as not to disclose the names of the assured, and therefore that it could not know, when the second policy was issued, that there was a prior one of its own outstanding on the same life. If the company, to serve its own purposes, saw fit to adopt an imperfect and incomplete system of recording its policies, whereby its books failed to show what, if prudently and methodically kept, they would have revealed with respect to the names of the insured, it certainly should not be permitted to set up its own ignorance, resulting from its own negligence, as a valid reason for the nonapplication of the doctrine of waiver.

"It cannot be doubted that the company ought to have known the names of the persons upon whose lives it carried risks; and it is obvious that a proper attention to its business would have apprised its officers of those names, and consequently it has no right to set up its voluntary and censurable ignorance of those names as an excuse for not knowing that a prior policy had been issued by it on the life of Mary J. Marion."

In support of the contention of the defendant company that the judgment of the court below was correct, and that by its method of keeping its records of industrial insurance policies by numbers, and not by the names of the insured and beneficiaries, it was not guilty of negligence, the following cases are cited by its counsel in his brief: *Independent Life Ins. Co.* v. *Corum*, memorandum opinion of the former Tennessee Court of Civil Appeals, filed February 9, 1924[1]; *Helm* v. *Sun Life Ins.*

1. Unreported.

*Co. of America*, 141 Md., 326, 336, 118 A., 755, 27 A. L. R., 957; *Hood* v. *Prudential Ins. Co.*, 22 Pa. Super., 244, and on second appeal 26 Pa. Super., 527; and *Wilkinson* v. *Travelers' Ins. Co.* (Tex. Civ. App.), 72 S. W., 1016; to which should be added *Pisker* v. *Metropolitan Life Ins. Co.*, 115 N. J. Law, 582, 181 A., 31.

In *Independent Life Ins. Co.* v. *Corum* (1924), *supra*, it appeared that on February 25, 1918, an industrial insurance policy was issued on the life of Emma Hines and that Annie L. Corum was named as beneficiary thereto. It further appeared that the defendant company had, on September 24, 1917, issued a policy on the life of Emma Hines in which the insured's sister, Miss Nora Gordon, was named as beneficiary. The opinion further discloses that the agent of the defendant company, who solicited and procured the second policy, was not the agent who procured the first policy, and did not know of the existence of the first policy, and that different agents collected the premiums on each of the policies. The defendant company did not know that it had two policies on the life of Emma Hines until after her death, when a demand was made upon it for the payment of both policies. It is stated in the opinion that the defendant company followed the general custom and usage of industrial insurance companies in not keeping an index record of the names of the persons insured, but that the record was kept by numbers.

Each of the policies contained the following provision: "Unless otherwise stated in the blank space below in a waiver signed by the Secretary, this policy is void. . . . Or if any policy on the life of the insured has been issued by this company and is in force at the date hereof, unless this policy contains an endorsement signed by the Secre-

tary that such prior policy may be in force. The Company shall not be presumed or held to know of the existence of any previous policy, and in such case issuance of this policy shall not be deemed a waiver of this condition.''

As all premiums had been paid on both policies for a number of years prior to Emma Hines' death, it was insisted that the company was chargeable with knowledge of the existence of the second policy, and, by its conduct in accepting the premiums on both policies over a period of years, had waived the limitation as to concurrent insurance on the life of any one person, and, further, that it was the duty of the company so to keep its records as to be able, within a reasonable time, to ascertain the existence of a second policy, not containing the indorsement required by the above-quoted provision.

Both contentions, however, were overruled by the late Judge CLARK, who delivered the opinion of the court. In holding the provision of the policy valid, the court said:

''There is no waiver of the fact of prior existing insurance signed by the Secretary or otherwise. In the absence of such waiver according to the terms of the policy, it is void if any policy on the life of the insured had been issued by the defendant company and was in force on the date of the application. The prior policy was in force on said date. We think the provision is valid and nothing else appearing the policy invalid.''

As to the second contention of the plaintiff, it was held that it was necessary for the company to have actual knowledge of the existence of the two policies for it to waive its rights under the provision in issuing the second policy, and that there was nothing in the record

to show that the defendant company had any actual knowledge of the existence of the second policy until after the death of the insured.

The court also held that before the acceptance of the premiums would constitute a waiver, it must appear that the defendant company knew that it had issued both policies on the life of the insured, and with such knowledge continued the second policy in force, and accepted the premiums thereon, citing *Hood* v. *Prudential Life Ins. Co.,* 26 Pa. Super., 527.

It was held that the insurance company was not chargeable with knowledge of the existence of prior policies where their records were kept by numbers, and not in the names of the insured, or the beneficiaries, as it was customary for companies, writing industrial insurance, to keep their records in the method followed by the defendant.

In *Hood* v. *Prudential Life Ins. Co.,* 26 Pa. Super., 527, the headnote, which accurately states the case, is as follows:

"In an action upon a policy of life insurance it appeared that the policy contained this provision: 'This policy shall be void if there is in force upon the life of the insured an industrial policy, previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary authorizing this policy to be in force at the same time.' It also appeared that the company kept its records solely by the number of the policy, and only as its attention was directed to the number would it have any notice whatever of the name, or any other means of identification of the applicant for additional insurance. The company issued 30,000 industrial policies in the course of

each week. There was evidence that prior to the date of the policy in suit another industrial policy had been issued upon the life of the insured, and that this policy had no indorsement upon it authorizing the later policy. It appeared that the premiums on this policy were paid by the wife of the insured, and the premiums on the later policy by the insured himself. There was no evidence of actual notice or knowledge on the part of the officers of the company of the issuance of the later policy without the authorizing indorsement on the earlier policy. Held, (1) that the provision in the later policy requiring the authorizing indorsement on the earlier policy was reasonable in view of the circumstances under which the company conducted its business; (2) that the evidence failed to show any waiver on the part of the company of the provision requiring the authorizing indorsement; (3) that no recovery could be had on the policy in suit.''

In holding that the method, employed by the company in keeping records of its policies by numbers, was proper, the court said:

''We are clearly of opinion that the defendant had the right to keep its accounts as they were kept, relying entirely upon the number of the policy as the means by which they acquired knowledge of what was therein contained as to the person insured, the person for whose benefit the insurance was made and the amount thereof and any other facts and circumstances contained therein necessary to be known by the defendant, and that the acceptance of the premiums after the issue of the policies, under the peculiar circumstances of this case, was in no sense a waiver of the condition contained in the policy, as to the policy being void if previous insurance was in force, particularly in view of the fact that the defendant

offered to return the premiums, as shown in the cross-examination of the plaintiff in the trial." 26 Pa. Super., 527, 538.

*Helm* v. *Sun Life Ins. Co.* (1922), 141 Md., 326, 118 A., 755, 756, 27 A. L. R., 957, tends strongly to support the insistence of counsel for the defendant company in the case at bar.

On October 1, 1917, the company, on the application of Josephine Bayles, purporting to be the aunt of the insured, and in consideration of the weekly premium of five cents, issued an industrial policy for $120 on the life of Catherine V. Brown, a child seven years of age, in which Sarah J. Canby, the child's mother, was named as beneficiary.

On November 11, 1918, the company issued another policy on the life of the same child. In the application for this policy the name of the applicant and beneficiary was given as Sarah J. Helm, the child's mother, who had remarried after the issuance of the earlier policy.

The applications had been taken by different agents. It was conceded that on the application for the second policy the statement therein contained that the company had no other policy on the life of the child was made in good faith.

The child died on May 31, 1920, and the company, after paying the mother the amount due under the first policy, refused to make any payment under the second policy, except to the extent of the premiums paid thereon which were duly tendered. From the date of the second policy, an agent of the company collected the weekly premiums on the first policy, and another agent collected the premiums on the second, and each accounted for the same to the proper office of the company.

It appeared that the defendant company issued an average of 1,500 industrial policies a week, and the total number of policies in force was approximately 250,000, and the only receipts given to the person maintaining the insurance were entries made by the collector in the passbook retained by him, and the cost of conducting the business in any other way than by numbers, as, for example, in keeping individual ledgers, and sending out bills for premiums, would add so much to the expense of the insurance as to make it prohibitive, as the average weekly premium did not exceed eight cents.

The margin of profit to the company was small, and the company's patrons were those who could not afford to pay large premiums, and, further, even if it were practical for the company to keep an alphabetical list of the names of the risks, in many cases the names would be spelled phonetically to the agents, in some cases they would be given incorrectly, and consequently, in the large amount of business done by the company among the commoner names, there would be frequent duplication.

The policy sued on, under the heading ''Conditions,'' contained the following clause: ''Third. The liability of the company shall be limited to the amount of the premiums paid hereon if any other policy on said life shall have been previously issued by this company, and shall be in force at the date hereof, unless this or the previous policy contains an indorsement signed by the president, vice president or secretary that this policy may also be in force at the same time. The company shall not be presumed to know of the existence of any previous policy, and in such case the issuance of this policy shall not be deemed a waiver of this condition.''

In holding that no recovery could be had on the second policy, the court said:

"Without departing in any degree from the decision in *Monahan's Case,* or questioning the clear and forcible reasoning of the Court, it is, we think, clearly distinguishable from the case at bar. There the court was dealing with a forfeiture clause, which the court said exacted from the beneficiary of the policy, 'at the risk of a drastic penalty,' the disclosure of a fact which the company itself knew, or was 'bound to know,' and that the doctrine of estoppel applied because the acceptance and retention of the premiums by the company were inconsistent with the defense denying the validity of the policy in its inception. Here the condition in the policy does not declare that the policy shall be void in case a previous policy issued by the company on the life of the insured is in force at the date of the second policy, but simply provides that in case there is such a policy the liability of the company on the second policy shall be limited to the amount of premiums paid thereon, unless there is an indorsement on one of the policies, signed by the president, vice president or secretary of the company, that the second policy 'may also be in force at the same time.' If the condition mentioned, instead of limiting the liability of the company to the amount of premiums paid, had provided that in case there was such other insurance the company should only be liable for one-half of the face of the policy, it could not be said that it was too unreasonable to receive the sanction of the courts, and if the liability of the company can, by the terms of its policy, be altered at all under such circumstances, there is no reason why, in the absence of fraud

or misrepresentation, it cannot be limited to the amount of the premiums paid.

"According to the agreed statement of facts, the company does not 'keep a list of or ledger accounts with holders of its policies and has no means of determining from its books or otherwise, . . . whether it is twice insuring the same risk;' that the cost of conducting its business in any other way would so add to the cost and expense of the insurance 'as to make it prohibitive,' and that the condition referred to is inserted in every policy for the purpose of insuring 'the non-duplication of its risks,' and preventing 'any insurance from being taken out for the purpose of speculating on the insured's life,' yet if the settled rule stated and applied in *Monahan's Case* to the forfeiture clause there under consideration, should be held to be applicable to the condition referred to in the present case, it would render that condition entirely nugatory."

*Pisker* v. *Metropolitan Life Insurance Co.* (1935), 115 N. J. Law, 582, 181 A., 31, 32, is the latest and perhaps the best reasoned case that the court has been able to discover dealing with the subject involved in the case at bar.

It appeared that the defendant company had issued four industrial policies on the life of the decedent, Albert Baurle, two of them dated January 2, 1933, the third dated May 15, 1933, and the fourth dated August 28, 1933. There was also a fifth policy issued on November 6, 1933.

The insured died December 9, 1933, and the defendant paid the first two policies, but refused to pay the other three, whereupon plaintiff brought suit thereon, and re-

covered on the third and fourth policies, a directed verdict being entered for the defendant on the fifth policy.

Among the conditions was one which reads as follows:

"If (3) any policy on the life of the Insured hereunder has been previously issued by this Company and is in force at the date hereof, unless the number of such prior policy has been endorsed by the Company in the 'Space for Endorsements' on page 4 hereof (it being expressly agreed that the Company shall not, in the absence of such endorsement, be assumed or held to know or to have known of the existence of such prior Policy, and that the issuance of this Policy shall not be deemed a waiver of such last mentioned condition), then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of the premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company."

After discussing some other questions not relevant here, the court said: "We do not think it worth while, however, to go into these matters, for the reason that our examination of the policies and the evidence presented leads us to the conclusion that the case must be decided, not upon answers or lack of answers to questions contained in the applications, nor disputed questions of fact as to the violations of the conditions of the policies pertaining to the status of the insured's health when the policies were issued, but upon the existence of an undisputed fact in the case, which, under the terms of the policies, constituted a direct violation of one of the conditions thereof, and made it imperative for the trial court for that reason to direct a verdict for the defendant.

"The condition to which we refer is No. 3 of the policy, cited, *supra,* and has to do with the existence of prior policies of insurance on the life of the insured in the defendant company.

"It is admitted that at the time each of the two policies in question was issued and delivered, there were in force in defendant's company one or more prior policies of insurance on the life of the insured, the numbers of which were not indorsed upon the two policies as required by the conditions thereof.

"In fact, Policy P 1, dated May 15, 1933, the first of the two policies involved in this suit, contained no indorsement, by number or otherwise, showing any other policies covering the life of the decedent in force in defendant company. At the time, however, Policy P 1 was issued, there were two other policies in force issued January 2, 1933, nearly five months previous to Policy P 1. The second of said policies sued on, issued August 28, 1933, had indorsed thereon a statement showing that the two previous January policies were in force, but it failed to disclose that Policy P 1 had been issued and was in force. In spite of this, however, the trial court submitted to the jury for its determination the question of material, fraudulent misrepresentations in the applications for policies and the question whether the insured or the defendant's agents were responsible therefor.

"The trial court thus confused the law applicable to negotiations and applications for a policy of insurance with the law applicable to a condition in the policy itself. There is a difference between obtaining a contract through a misrepresentation as to a fact, and making the existence of that fact a condition upon which the

contract, by its written terms, is dependent. *McAuliffe* v. *Metropolitan Life Ins. Co.*, 93 N. J. Law, 189, 107 A., 258; *Chorney* v. *Metropolitan Life Ins. Co.* (R. I.), 172 A., 392.''

The court further said: ''While the continued acceptance by an insurance company of the premiums might constitute a waiver of a condition where such action would be inconsistent with the defense that the insurance company had absolutely no obligation remaining under the policy, as in *Melick* v. *Metropolitan Life Insurance Co.*, 84 N. J. Law, 437, 87 A., 75, where a forfeiture of the premiums was involved, such principle is not applicable in the instant case. Here the failure to comply with the condition did not cause a forfeiture but created an alternative obligation; that is, to return the premiums paid on the policies. The continued acceptance and receipt of the premiums by defendant, being entirely consistent with the existence of such alternative obligation, did not act as a waiver nor operate to estop the defendant from relying on the conditions. *Helm* v. *Sun Life Ins. Co. of America*, 141 Md., 326, 118 A., 755, 27 A. L. R., 957.''

The foregoing are all of the authorities cited in the briefs or found by the court's independent investigation dealing directly with the point raised by this suit. From a consideration of these cases, it is fair to draw the inference that those apparently supporting the contention of the plaintiff were decided because a forfeiture clause was contained in the policies, whereas in the cases holding a contrary view there was no forfeiture clause involved, but, on the contrary, there was a provision limiting the liability of the company to a certain maximum

amount on any one life, as does the provision in the policy in the instant case.

As apparently industrial companies throughout the country keep their records by numbers, conformity on the part of the defendant with such general usage and custom is evidence, not of negligence, but of proper practice.

As the court finds itself in accord with *Hood* v. *Prudential Life Insurance Co.*, 26 Pa. Super., 527; *Helm* v. *Sun Life Insurance Co.*, 141 Md., 326, 118 A., 755, 27 A. L. R., 957, and *Pisker* v. *Metropolitan Life Insurance Co.*, 115 N. J. Law, 582, 181 A., 31, it results that the judgment of the court below is affirmed.